## Lamoille Grain Company, Inc. v. St. Johnsbury and Lamoille County Railroad

[369 A.2d 1389]

No. 294-75

Present: Barney, C.J., Daley, Larrow, and Billings, JJ., and Shangraw, C.J. (Ret.), Specially Assigned

Opinion Filed December 21, 1976

6

*James C. Gallagher* of *Downs, Rachlin & Martin,* St. Johnsbury, for Plaintiff.

*Sargent & White,* Morristown, for Defendant.

**Barney, C.J.** A railroad car of the defendant went off the end of a siding track and knocked over several grain storage bins that the plaintiff grain company maintained there on land leased from the railroad. The grain had to be sold in bulk to salvage any value, and there was evidence of damage and loss to the extent of more than twelve thousand dollars.

The railroad claimed it was not liable because the "stops" belonging at the end of the siding had been removed, unbeknownst to the railroad, by third persons. It also claimed that the lease agreement contained an indemnity clause saving the railroad harmless from any liability for damage, injury or loss to the grain company or its personnel.

The lower court found in favor of the grain company and awarded damages. In so doing, it held that the indemnity clause could not excuse the railroad for liability due to damage to the grain company's property. The appeal is now here.

The basis of the lower court's holding was that, as a matter of law, "the indemnification agreement could not be applied where the negligence is that of the indemnitee." With this, we cannot agree.

 Under the common law, public policy forbids a railroad from restricting its liability to the public, but this rule does not extend to the railroad's private undertakings. In private dealings the railroad has the right to grant or withhold the privilege to use or occupy its lands or premises on such terms and conditions as it deems appropriate. *Boston & Maine R.R.* v. *Howard Hardware Co.,* 123 Vt. 203, 206, 186 A.2d 184 (1962).

 In *Osgood* v. *Central Vermont Ry.,* 77 Vt. 334, 60 A. 137 (1905), this Court has already upheld the propriety of a contract which contained an indemnity provision whereby the railroad was held harmless from all liability for loss, damage or injury resulting from the negligence of the defendant or in any other manner. We affirm this holding.

On determining that an indemnity clause protecting a railroad against its own negligence is not per se unconscionable, the question becomes one of whether the parties' agreements in this

particular case provide such protection. Appellee argues that if a railroad may be excused from its own negligence, it may only be by virtue of "clear and unequivocal" language to that effect. He would have us hold that absent a specific reference to negligence, present in *Osgood*, the requirement of "clear and unequivocal" language is not met and the defendant may not be excused for its negligence.

We do not find that the failure of the contract to literally and specifically excuse the railroad for its own negligence precludes other verbiage from having that same effect. Instead, we treat this as we would other questions of contractual construction. Where the language of the agreement is clear, the intention and understanding of the parties must be taken to be that which their agreement declares. *Stevens* v. *Cross Abbott Co.*, 129 Vt. 538, 283 A.2d 249 (1971).

The court below, in Finding of Fact No. 24, stated that "paragraph 4 of the lease agreement if literally interpreted would require the Plaintiff to indemnify the Defendant for Plaintiff's claim and to save the Defendant harmless from Plaintiff's claim . . . ." We agree that the language of this contract is sufficiently clear to show the parties' intent that the railroad be held harmless for damages caused by its own negligence.

The court below addressed the comparative bargaining positions of the parties and held that the plaintiff was in a subordinate position with respect to negotiations since the plaintiff's only alternatives were to remove the silos from their location on defendant's land, thereby losing the benefit or rail delivery of grain, or execute the lease. Furthermore, it held that the "evidence clearly indicates that the most economical way to receive grain shipments was by rail."

The fact that the parties may be in unequal bargaining positions is not enough alone to justify non-enforcement of a contract; practically every contract negotiation involves parties with some bargaining disparity.

Title 9A, Vermont Statutes Annotated, § 2-302, comment 1, explains the principle of the unconscionability provision as being "one of the prevention of *oppression and unfair surprise* . . . and not of disturbance of allocation of risks because of superior bargaining power." (emphasis added).

Oppression is noticeably lacking here. Far from being forced to accept the terms of the contract, plaintiff succeeded in altering the one aspect of the contract it attempted to alter, the monthly amount due under the lease. As to the rest of the contract, plaintiff signed without even reading it, in effect agreeing to the terms whatever they may be.

Dealing with the issue of unfair surprise, the court in *Williams* v. *Walker-Thomas Furniture Co.*, 350 F.2d 445 (D.C. Cir. 1965), phrased the question as follows:

> Did each party to the contract, considering his obvious education or lack of it, have a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print and minimized by deceptive sales practices? [350 F.2d at 449.]

Given the business experience of the plaintiff, the comparative simplicity of the contract terms and the lack of deceptive sales practices, no unfair surprise is here evident.

Appellant contends that further evidence would have shown that the bargaining positions of the parties were not so uneven as to render the clause unconscionable. However, further evidence is unnecessary for us to make that decision. We hold recovery barred by the parties' contract.

*Judgment reversed.*