**BEN & JERRY'S HOMEMADE, INC., Plaintiff**

v.

**LA SOUL, INC., Defendant.**

No. 2:95–cv–304.

United States District Court, D. Vermont.

Oct. 29, 1997.

Robert S. DiPalma, Paul Frank & Collins, Inc., Burlington, VT, Douglas H. Meal, Douglas H. Driemeier, Kevin J. O'Conner, Robert A. Skinner, Ropes & Gray, Boston, MA, for Plaintiff.

William Michael McCarty, Jr., McCarty Law Offices, Brattleboro, VT, Lewis J. Pepperman, Donald B. Brenner, Stark & Stark, Princeton, NJ, for Defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND II

SESSIONS, District Judge.

Plaintiff Ben & Jerry's Homemade, Inc. ("B & J") has moved for summary judgment and the entry of final judgment on Counts I and II of its amended complaint against La Soul, Inc. ("La Soul"). B & J seeks a judgment that La Soul owes it $30,000.00 plus interest, based on two letter agreements signed by La Soul's president and chief executive officer, Reverend James Carter, which acknowledged loans to La Soul of $15,000.00 apiece, and undertook to repay the loans with interest by September 1995. La Soul opposes summary judgment, arguing that the letters do not reflect the true agreement between the parties; that the claims are barred by the defense of duress; and that La Soul has been the victim of fraud in the inducement. B & J responds that the parol evidence rule bars consideration of any evidence of an oral agreement that varies or contradicts the terms of the written agreement; that La Soul's defense of duress lacks an essential element; and that the facts, taken in the light most favorable to La Soul, do not support a claim of fraud in the inducement.

### I. *Factual Background*

Beginning in 1992, B & J and La Soul entered into an agreement in which La Soul would supply apple pie filling and crust for B & J to use in producing its "Apple Pie" frozen yogurt. La Soul is a New Jersey corporation formed by the Reverend James Carter as a minority owned baking company with the social mission of providing employment for recovering drug addicts and alcoholics. According to La Soul, B & J made a long-term commitment to assist the company in its social mission by agreeing to order consistent and substantial quantities of La Soul's product, and it thereby secured the benefits of favorable publicity as "caring capitalists."

Between 1993 and 1995, however, the business relationship between B & J was beset with problems: according to B & J, La Soul had difficulty with manufacturing quality control, which interfered with its ability to fill B & J's orders. According to La Soul, B & J's ordering practice was so erratic as to devastate the fledgling business, which was forced one month to lay off its fragile employees and the next month to hire them back and pay overtime.

By 1995, La Soul was in desperate financial trouble. On April 9, 1995, Bob Holland, B & J's chief executive officer at the time, and Reverend Carter met and discussed the situation. Reverend Carter has testified that Mr. Holland assured him at that meeting that he would take up with B & J's Board of Directors what recompense B & J would make for contributing to La Soul's financial exigency, and that it would wire La Soul $30,000.00 as a preliminary payment for immediate expenses.

Sometime in April 1995, according to its amended complaint, B & J informed La Soul that it was discontinuing production of its Apple Pie frozen yogurt, because consumer demand was insufficient. On or about April 11, 1995, B & J provided $15,000.00 to La Soul, pursuant to a written agreement dated April 10, 1995 and signed by Reverend Carter as president and chief executive officer of La Soul. The written agreement referred to the "Apple Pie Phase–Out Plan," and stated that the $15,000.00 plus interest would be repaid no later than September 11, 1995. On or about April 21, 1995, B & J provided another $15,000.00 to La Soul, pursuant to a written agreement dated April 20, 1995 and signed by Reverend Carter. This sum was to be repaid no later than September 21, 1995. According to B & J, these funds have not been repaid.

According to La Soul, the funds were never intended to be loans. Reverend Carter avers that when he received the first letter agreement referring to the $15,000.00 as a loan, he spoke with Mr. Holland, who assured him that the money was not a loan, but that Reverend Carter should sign the letter anyway in order to receive the funds. In reliance upon this assurance, Reverend Carter signed the April 10 letter, and subsequently signed the April 20 letter.

## II. *Discussion*

### A. *Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)).

### B. *Parol Evidence*

■ The parol evidence rule bars the admission of evidence of a prior or contemporaneous oral agreement that varies or contradicts the terms of a written agreement. *Housing Vermont v. Goldsmith & Morris*, 685 A.2d 1086, 1088 (Vt.1996); *Filmlife, Inc. v. Mal "Z" Ena. Inc.*, 251 N.J.Super. 570, 598 A.2d 1234, 1235 (1991). The parol evidence rule does not bar introduction of extrinsic evidence to prove fraud in the inducement or duress, however. *Big G Corp. v. Henry*, 148 Vt. 589, 594, 536 A.2d 559, 562 (1987); *Filmlife*, 598 A.2d at 1235; *Union Fur Shop v. Max Melzer, Inc.*, 133 N.J. Eq. 416, 29 A.2d 873, 875 (1943).

### C. *Fraud in the Inducement*

■The parties have not addressed whether Vermont or New Jersey law should apply to the issues raised. As to the claim of fraud in the inducement, the elements of the defense are similar in both jurisdictions: an intentional misrepresentation of fact affecting the essence of the transaction, false when made and known to be false by the maker, not open to the defrauded party's knowledge, and relied upon by the defrauded party to its damage. *Union Bank v. Jones*, 138 Vt. 115, 121, 411 A.2d 1338, 1342 (1980). See *also Giannone v. Cohen (In re Paragon Securities Co.)*, 589 F.2d 1240, 1242 (3d Cir.1978); *Jewish Center v. Whale*, 86 N.J. 619, 432 A.2d 521, 524 (1981); *Suqarline Associates v. Alpen Associates*, 155 Vt. 437, 444, 586 A.2d 1115, 1119–20 (1990).

■ B & J argues that any reliance by Reverend Carter on alleged oral statements by Mr. Holland was not reasonable, and that in any event the statements were promises of future performance, not statements of fact. Whether Reverend Carter was justified in his reliance on these representations is a disputed issue of material fact, and as such is not appropriate for summary judgment. *Vermont Plastics. Inc. v. Brine. Inc.*, 79 F.3d 272, 277–78 (2d Cir.1996) (justifiable reliance concerns qualities and characteristics of individual who relied on representations, and circumstances of particular case); *Cipollone v. Liggett Group. Inc.*, 683 F.Supp. 1487, 1500 (D.N.J.1988) (issue of justifiable reliance on defendants' representations could go to jury).

■ Furthermore, misrepresentations about future actions can be fraudulent if, at the time the statements are made, the maker intends to act differently from his or her promise. *Lightning Lube. Inc. v. Witco Corp.*, 4 F.3d 1153, 1186 (3d Cir.1993); *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 133, 636 A.2d 744, 747 (1993). Intention may be shown "circumstantially by ... subsequent acts and by subsequent events or by evidence that the statement was impossible to fulfill based upon contingencies or circumstances known to the promisor at the time of the statement but ... unknown to the promisee." *California Natural, Inc. v. Nestle Holdings, Inc.*, 631 F.Supp. 465, 473–74 (D.N.J.1986) (denying summary judgment on fraudulent misrepresentation claim (quoting *Capano v. Borough of Stone Harbor*, 530 F.Supp. 1254, 1264 (D.N.J.1982))).

La Soul has submitted evidence that B & J's CEO assured Reverend Carter that despite the wording of the April 10 letter, the funds from B & J would not be treated by it as a loan. Whether this representation was made, and whether it was fraudulent, will be matters to be determined by the trier of fact.

**D. *Economic Duress***

 The Court notes that the elements of the defense of economic duress may not be identical in Vermont and New Jersey. In Vermont,

> to prevail on the issue of economic duress (1) the coercion must be directed toward economic interests; (2) one side must have involuntarily accepted the terms of another; (3) the coercive circumstances must have been the result of the acts of the opposite party; and (4) there must be some threat to do something harmful which the threatening party has no legal right to do.

*Kokoletsos v. Frank Babcock & Son. Inc.,* 149 Vt. 33, 36, 538 A.2d 178 (1987) (internal quotations and citations omitted). The New Jersey Supreme Court, in *Continental Bank v. Barclay Riding Academy, Inc.,* 93 N.J. 153, 459 A.2d 1163 (1983), states that this fourth element may be satisfied by "acts or threats that are wrongful, not necessarily in a legal, but in a moral or equitable sense." *Id.* 459 A.2d at 1175 (citation omitted)., B & J appears to concede that the New Jersey formula is appropriate, in its citation to *Continental Bank,* and to *Rubenstein v. Rubenstein,* 20 N.J. 359, 120 A.2d 11, 15 (1956) ("means in themselves lawful must not be so oppressively used as to constitute, e.g., an abuse of legal remedies"). The remainder of the quoted passage states: "[t]he act or conduct complained of need not be 'unlawful' in the technical sense of the term; it suffices if it is 'wrongful in the sense that it is so oppressive under given circumstances as to constrain one to do what his free will would refuse.'" *Id.*

 B & J argues that it has not engaged in any wrongful conduct that meets the standard for economic duress, that it merely conditioned a loan on a promise to repay the money with interest. La Soul argues that B & J committed itself to support La Soul, that La Soul's precarious financial circumstances were engineered by B & J, and that B & J had promised to rectify matters. It contends that when B & J subsequently extracted Reverend Carter's signature on a loan agreement as a condition of receiving desperately needed funds, Reverend Carter was coerced.

Whether B & J was "obligated to keep La Soul afloat," Def.'s Sur–Reply at 10, and whether Reverend Carter was coerced into signing the agreements by the wrongful conduct of agents of B & J, are fact-dependent matters. The material facts are in dispute, and summary judgment is therefore denied.

**III. *Conclusion***

B & J's. Motion for Summary Judgment and Entry of Final Judgment on counts I and II of the Amended Complaint (paper 35) is hereby DENIED.