Kathleen M. HOEKER v. DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES and Sally Lindberg

[765 A.2d 495]

No. 99-260

October 25, 2000. Plaintiff Kathleen Hoeker appeals from an order of the Windsor Superior Court granting defendant Department of Social and Rehabilitation Services (SRS) summary judgment on her claim for damages against SRS. This dispute arises out of a contract between plaintiff and SRS for plaintiff to serve as a foster parent. Plaintiff claims that SRS was negligent in breaching the contract by failing to provide wraparound services. We affirm.

In December 1989, plaintiff began serving as a foster parent for J.P.S., a juvenile previously adjudged to be a child in need of care or supervision (CHINS) under 33 V.S.A. § 5526. J.P.S. received additional services such as counseling and respite care, collectively called wraparound services, through Northeastern Family Institute (NFI), an organization providing professional therapeutic foster care services to emotionally disturbed children. In March 1992, plaintiff and her husband moved to Alabama and took J.P.S. with them after consulting with SRS. Prior to the move, plaintiff dis-

cussed the move with Sally Lindberg, J.P.S.'s social worker at SRS. At that time, plaintiff alleges that Lindberg promised to arrange for extensive supplemental services for J.P.S. in Alabama, such as were being provided in Vermont by NFI.

Upon arriving in Alabama, plaintiff discovered that SRS had not arranged for supplemental services in advance and those services that were available in Alabama were not commensurate with those available through NFI. Plaintiff contacted Lindberg in Vermont on several occasions in attempts to secure the provision of wraparound services for J.P.S. In response, SRS proposed a contract that would govern the relationship between plaintiff and SRS. Plaintiff consulted with an attorney, negotiated several changes to the contract and signed the document in November 1992.

In April 1993, J.P.S. assaulted plaintiff, causing permanent injury to her thumb. Shortly thereafter, plaintiff terminated the contract with SRS and returned J.P.S. to Vermont. Plaintiff filed suit against SRS claiming that SRS's failure to provide wraparound services in Alabama caused her injury. The trial court granted defendant's motion for summary judgment, holding that enforcement of any prior oral agreement between Lindberg and plaintiff to provide wraparound services is barred by a merger clause in the written contract. On appeal, plaintiff claims that (1) the merger clause does not exclude the oral agreement; (2) in any event she is not bound by the merger clause; and (3) SRS failed to provide wraparound services as required by the written contract. She argues that the written contract, by its terms, incorporated a duty to provide wraparound services, and that the statutory and regulatory regime governing SRS, which she claims is part of the contract, also includes these duties.

Before turning to the merits, we address defendant's motion to dismiss the

notice of appeal as untimely, in violation of V.R.A.P. 4. At the time of its decision in February 1999, the trial court filled out an "Entry Regarding Motion" form and the court clerk entered "case closed" on the docket. Defendant claims that this entry is sufficient to begin tolling of the 30 day appeal period. In May 1999, the court signed a formal final judgment order. Plaintiff did not file a notice of appeal until June 1999, within 30 days of this order. Plaintiff contends that the court's judgment did not become final, and thus subject to appeal, until this later date. We agree. As we made clear in *Baker v. Town of Goshen*, 169 Vt. 145, 150, 730 A.2d 592, 596 (1999), a court must approve and sign a written judgment order for the decision to be final. The docket entry of the court's decision is not an entry of judgment and does not commence the running of the appeal period. See *id.* The "Entry Regarding Motion" that serves as a directive to the clerk is not a written judgment order. In this case, the judge provided the written judgment order required by V.R.C.P. 58 on May 12, 1999. Therefore, plaintiff had thirty days from that date in which to file notice of appeal, which she did.

Turning to the merits, we first clarify the type of claim that plaintiff raises. Despite plaintiff's attempt to characterize her claims as negligence-based, the more persuasive analysis is that her claims are based on breach of contract. Plaintiff claims that her damages are a result of defendant's failure to provide wraparound services to J.P. S., a duty allegedly owed under the contract between the parties. Alternatively, plaintiff claims that those services were promised by a prior oral agreement between the parties. Under either claim, the "duty" that defendant purported to breach arose out of a contract, rather than common law or statute. See *Lapoint v. Dumont Constr. Co.*, 128 Vt. 8, 10, 258 A.2d 570, 571 (1969) ("action for breach of duty

arising out of a contract of employment . . . is based on failure to perform the special arrangement regardless of negligence"). Because the obligations of the parties are defined only by contract, the plaintiff's claim is governed by contract law.

On appeal from summary judgment, we use "the same standard as the trial court" and will affirm summary judgment "if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Granger v. Town of Woodford*, 167 Vt. 610, 611, 708 A.2d 1345, 1346 (1998) (mem.); see also V.R.C.P. 56(c). Plaintiff's principal argument is that the entire agreement between the parties includes the prior oral representations made to her by Lindberg about SRS's obligation to provide wraparound services in Alabama. Enforcement of any prior oral agreement, however, is barred by a merger clause in the written contract. Among the terms of the contract, Attachment C, "Contract for Services, Customary State Contract Provisions," included the following clause:

> 1. *Entire Agreement.* This contract represents the entire agreement between the parties on this subject matter. All prior agreements, representations, statements, negotiations, and understandings shall have no effect.

Generally, a "merger clause," such as the one here, is designed to avoid the confusion created when parties may have several agreements or contracts between them prior to completing a written agreement. The merger clause confirms that the contract is "adopted by the parties as a *complete and exclusive* statement of the terms of the agreement." Restatement (Second) of Contracts § 210 (1981) (emphasis added). Thus the written contract becomes the exclusive medium for determining the understanding of the parties, see *Dartmouth Sav. Bank v. F.O.S.*

*Assocs.*, 145 Vt. 62, 69, 486 A.2d 623, 626-27 (1984), and prior agreements covering the same subject matter are unenforceable. See *United Park Ass'n v. Ringuette*, 168 Vt. 603, 606-07, 719 A.2d 884, 887-88 (1998) (mem.).

In this case, the "Entire Agreement" clause expressly states that the written agreement controls the intent of the parties on all aspects of foster care for J.P.S. Any promises made by Lindberg about the availability of services in Alabama are covered by this clause. There is no evidence that this contract involved fraud or misrepresentation. See *Ben & Jerry's Homemade, Inc. v. La Soul, Inc.*, 983 F. Supp. 504, 506-07 (D. Vt. 1997) (reviewing elements of fraud and duress under Vermont law). In fact, plaintiff had her own counsel examine the document and suggest changes to it. Plaintiff was successful in negotiating several alterations to the contract. Thus, we agree with SRS that any prior oral agreement with Lindberg is unenforceable. See *Milton Bd. of School Dirs. v. Milton Staff Ass'n*, 163 Vt. 240, 244, 656 A.2d 993, 995 (1995). Even without the merger clause, the parol evidence rule would bar enforcement of a prior or contemporaneous oral agreement that varies or contradicts the terms of the written agreement. See *Housing Vermont v. Goldsmith & Morris*, 165 Vt. 428, 431, 685 A.2d 1086, 1088 (1996).

We note this is not a case where two independent contracts covering different subject matter govern the same transaction. Cf. *Chappell v. Northern Realty, Inc.*, 128 Vt. 476, 479, 266 A.2d 453, 455-56 (1970). The written contract states its subject matter is "personal services generally on the subject of specialized foster care. Detailed services to be provided by the contractor are described [below]." The oral promises made by Lindberg also concern the services for specialized foster care. These overlapping promises are precisely the type of prior agreement that merges into the final written document.

See *Dartmouth Sav. Bank*, 145 Vt. at 69, 486 A.2d at 627.

Plaintiff argues that she is not bound by this merger clause. She claims that she is bound only by the terms relating to payment and no others because she signed the contract only to get paid regularly. We have long held that parties are bound by the plain and express meaning of a contract. See *Goodrich v. United States Fidelity & Guaranty Co.*, 152 Vt. 590, 594, 568 A.2d 385, 388 (1989); *Lamoille Grain Co. v. St. Johnsbury & Lamoille County R.R.*, 135 Vt. 5, 8, 369 A.2d 1389, 1390 (1976). The fact that plaintiff might have devoted her attention solely to the payment clauses of the contract is of no significance. See *Lamoille Grain Co.*, 135 Vt. at 9, 369 A.2d at 1391 (where plaintiff succeeded in altering one aspect of the contract, plaintiff bound to entire agreement even if plaintiff signed without reading the rest of the contract).

Plaintiff's final claim is that the terms of the written agreement itself include an obligation to provide wraparound services. She argues that the written contract was intended to implement the case plan for J.P.S. designed by SRS. That case plan, however, fails to impose the duties that plaintiff claims were breached. The case plan in place at the time of plaintiff's injury does not obligate SRS to secure wraparound services in Alabama. The case plan explicitly contemplates that plaintiff was to locate and arrange for those services in Alabama, and SRS would fund the cost. In fact, plaintiff was successful in locating several services for J.P.S., including counseling services, a psychiatrist, and respite services.

Finally, we reject plaintiff's claim that the general statutory and regulatory regimes that govern SRS contain attendant duties to provide services other than those which were provided to J.P.S. Plaintiff argues that the contract necessarily incorporates all of the statutes and

regulations relating to SRS and that by not providing wraparound services, SRS violated these provisions. There is nothing in the statutes, however, which requires SRS to provide any wraparound services to a foster parent.

*Affirmed.*

As amended November 28, 2000.