## Beth A. Maglin v. Janaki N. Tschannerl

[800 A.2d 486]

No. 00-182

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed May 24, 2002

*Kristen P. Swartwout* of *Crispe & Crispe*, Brattleboro, for Plaintiff-Appellant.

*James E. Preston* and *Richard H. Wadhams, Jr.* of *Pierson, Wadhams, Quinn & Yates*, Burlington, for Defendant-Appellee.

**Johnson, J.** Plaintiff Beth Maglin appeals a Windham Superior Court order granting defendant Janaki Tschannerl's motion for summary judgment on plaintiff's personal injury claim for harm suffered in an automobile accident. The court held that a release signed by plaintiff after the accident barred her from seeking further relief. Plaintiff claims that the release should be voided because 1) the release violates the legislative remedy for rush releases, 12 V.S.A. § 1076; 2) there was a mutual mistake of fact concerning her injury; and 3) it is unconscionable to enforce the release. We affirm.

Defendant's car hit plaintiff's car from behind in a two-car accident on March 12, 1996. Plaintiff's car did not sustain major damage, but plaintiff suffered from whiplash. Ten days after the accident, an agent from defendant's insurance company, State Farm Insurance, visited plaintiff at her home. Plaintiff told the insurance agent she incurred "minor whiplash" from the accident. Plaintiff accepted the insurance agent's $500 as compensation for the accident in exchange for her agreeing to release defendant from all possible future claims. The release stated:

> For the sole consideration of $500.00 the receipt and sufficiency is hereby acknowledged, the undersigned hereby releases and forever discharges [defendant] from any and all claims ... causes of action or suits of any kind or nature

whatsoever, and particularly on account of *all injuries, known and unknown, both to the person and the property, which have resulted or may in the future develop* from an accident which occurred on or about the 12th day of March, 1996.

(Emphasis added.) At the time, plaintiff knew she sustained injury, but believed the $500 to be reasonable compensation for what she viewed as a minor accident with minor injuries. Plaintiff did not consult a physician about her injuries or an attorney about possible claims against defendant. Nevertheless, she signed the release.

Shortly after signing the release, plaintiff's symptoms worsened. She experienced significant neck pain, headaches, nausea, pain in her arms, numbness in her hands, and she could not stand, sit, or lie down comfortably. Plaintiff's chiropractor subsequently diagnosed her symptoms as stemming from whiplash. Her chiropractor explained to her that whiplash injuries are commonly misunderstood and underestimated until serious symptoms occur. Plaintiff incurred medical expenses in excess of $10,000 for treatment for her whiplash injury and other symptoms. These expenses were incurred through numerous diagnostic imaging techniques together with successive chiropractic, physical, and cranial sacral therapy sessions.

Plaintiff filed a complaint for personal injury damages alleging that defendant's negligence resulted in severe personal injuries to plaintiff. Defendant and plaintiff filed cross-motions for summary judgment. At issue was whether the release signed by plaintiff barred defendant's liability for damages. In granting defendant summary judgment, the court concluded that the release is valid and enforceable. The court stated that plaintiff's mistake as to the future consequences of a known injury is not a mutual mistake of fact that can void the contract. The court therefore barred plaintiff's claims. This appeal followed.

On appeal, plaintiff contends that the release is unenforceable because it violates the statutes designed to provide relief from rushed and unfair release agreements, 12 V.S.A. §§ 1076-1077. Plaintiff argues that even absent strict compliance with §§ 1076 and 1077, the statutes evince the Legislature's general intent to void these types of releases. She claims that because the statutes are designed to protect people like plaintiff from executing rush releases, this Court should allow her to disavow the release. Additionally, plaintiff argues that she and defendant were mistaken as to a material fact when they entered into the release. She claims the relevant inquiry should be what her intent was at the time she signed the agreement. Thus, plaintiff argues, she

did not intend to release a claim for the symptoms she later developed, but rather only for the "minor whiplash" she believed she suffered at the time. Finally, plaintiff claims that the release is unconscionable because of the unequal bargaining power between the insurance agent and herself.

Defendant counters that plaintiff cannot raise an argument based on 12 V.S.A. §§ 1076-1077 because she failed to raise it below. Even if this Court considers §§ 1076 and 1077, defendant contends that plaintiff failed to comply with the statute of limitations and other requirements of the statutes; thus, the release is enforceable. Defendant also maintains that there was no mistake of fact that should void the release because, at the time the release was executed, both parties knew of plaintiff's whiplash injury and plaintiff demonstrated an understanding of the terms of the release. Finally, defendant asserts that the release is not unconscionable because any inherent unequal bargaining power was not used coercively, and plaintiff was not subject to any undue pressure or duress.

Before we turn to the specific claims of plaintiff, we note that there is a substantial body of case law with facts similar to those presented here, and that plaintiff is correct that the trend is to avoid releases on the various legal grounds plaintiff has raised here. E.g., *Newborn v. Hood*, 408 N.E.2d 474, 476 (Ill. App. Ct. 1980); see also Annotation, *Modern Status of Rules as to Avoidance of Release of Personal Injury Claim on Ground of Mistake as to Nature and Extent of Injuries*, 13 A.L.R.4th 686, 694 (1982) (citing cases). Apparently, it is quite common for people to enter into early releases without fully considering the consequences. Because of the unjust results in many of these cases, courts have responded by avoiding releases between injured parties and insurance companies. *Newborn*, 408 N.E.2d at 476 ("facts, when finally known, present an unconscionable result because of the equitable principle of doing justice under the circumstances"). An examination of those numerous decisions reveals at least one truth — that the greater the disparity in the actual damages that manifested themselves after the signing of a release, and the amount paid in the early settlement, the more likely it is that the court will find some manner of voiding the release. The grounds for decision vary, but include avoidance of the release on mutual mistake of fact, or on what courts have found to be a more "objective" view of the parties' intent, or because the surrounding circumstances were considered unconscionable. See, e.g., *Witt v. Watkins*, 579 P.2d 1065, 1069 (Alaska 1978) (applying objective test to overturn release, yet acknowledging

that any mistake of fact was unilateral); *Woyma v. Ciolek*, 465 N.E.2d 486, 488 (Ohio Ct. App. 1983) (release set aside on the grounds of mutual mistake despite clear language of the release where compensation was deemed inadequate); see also *McCamley v. Shockey*, 636 F.2d 256, 259 (8th Cir. 1981) (language of release was held not to indicate parties' intent to settle claims for unknown injuries when result would be inequitable). To be sure, there are contrary decisions that reject the distortion of mistake of fact doctrine and contract interpretation, and that hold to the competing policies that underlie the validity of releases voluntarily and knowingly given. See, e.g., *Bernstein v. Kapneck*, 430 A.2d 602, 607-08 (Md. 1981) (noting that most cases voiding releases "bastardiz[e]" the concept of mutual mistake of fact, and concluding, "[w]e are not convinced that violence to the human body presents a unique situation such that an independent set of principles is required to interpret contracts concerning the injury"); *Raymond v. Feldmann*, 853 P.2d 297, 299 (Or. Ct. App. 1993) ("the settlement of claims prior to litigation [is] in the public interest. There is no reason in principle why an improvident settlement made before trial is any more to be set aside than a judgment ... that hindsight later proves to have been obtained too soon and for too little.") (citations omitted); *Collier v. Walls*, 369 S.W.2d 747, 762 (Tenn. App. Ct. 1962) (refusing to set aside a settlement based on a release "merely because the injuries proved more serious than the releasor ... believed them to be") (internal citations omitted).

We are unable to find, however, a decision avoiding a release in the face of a statutory remedy, the terms of which plaintiff has failed to meet. 12 V.S.A. §§ 1076, 1077. Because our own Legislature has addressed plaintiff's problem, and set the terms for avoidance of a release entered into shortly after personal injury, the decision for this Court is more problematic than for courts in other states faced with similar facts. We turn first, then, to the application of the statute and the impact of legislative policy on plaintiff's claims.

Section 1076 governs disavowal of releases for claims of personal injury or death. The statute provides in part that: "[a]n agreement entered into by a person or his legal representative within fifteen days after personal injury to him ... may be disavowed by such person or his legal representative within three years after making the agreement." *Id.* In addition, 12 V.S.A. § 1077 further requires that to disavow the release plaintiff must return "any consideration received to the person who paid or delivered the same."

■ Plaintiff failed to comply with either of the requirements imposed by the statutes to disavow the release. She did not meet the three-year limitation period, nor did she return the consideration received for the release. She concedes that she did not raise the arguments below. Plaintiff argues here that she satisfied the two requirements of the statutes when she filed the original case on December 15, 1997 and again on April 19, 2000 when she filed the appeal. Even if we were to consider an argument that was not raised below, cf. *In re Palmer*, 171 Vt. 464, 473, 769 A.2d 623, 629 (2000) (matters not raised or fairly presented below are not preserved for appeal), the statutory remedy is unavailing because the first time plaintiff invoked the statute — during this appeal — falls outside the three-year limitations period, and plaintiff has not returned the consideration as required.*

■ Plaintiff's contention that strict compliance with the statutes is unnecessary to benefit from the remedy is unpersuasive. The Legislature created a generous three-year time period to rescind a release entered into too quickly, undoubtedly in recognition of the fact that injuries may turn out to be more serious than they seemed initially. Plaintiff failed to take advantage of §§ 1076 and 1077, even after she had the advice of counsel. We will not alter the limitations period or the requirements for disavowal set out by the statute, where plaintiff has made no effort to comply with them.

■ Moreover, in view of the statute, we are constrained, in the absence of extraordinary facts, to find a common law remedy for plaintiff. Plaintiff argues that the release should be avoided on the basis of mutual mistake of fact, because she was mistaken as to the extent of her injuries. Without getting into whether a valid distinction should be made between cases in which the plaintiff does not know of the injury that later manifests itself, and those in which plaintiff has a known injury, but misjudges the future consequences of it, plaintiff has to show, at the very least, that the mistake was mutual. But plaintiff showed only that *she* was mistaken as to her injuries. Without a mutual

---

* The dissent asserts that plaintiff's filing of the suit was sufficient to invoke its protections. At the very least, however, plaintiff had an obligation to mention the statute somewhere in her trial court filings, which she failed to do. The first time plaintiff attempts to invoke the specific protections of the statute was on appeal. The dissent's suggestion that plaintiff be allowed to hold on to the consideration if and until she receives a favorable verdict larger than the amount received allows her to enjoy both the benefits of the consideration and the potential payoff of a lawsuit with no risk or consequences.

mistake of fact "one of the parties can no more rescind the contract without the other's express or implied assent, than he alone could have made it." *Enequist v. Bemis*, 115 Vt. 209, 212, 55 A.2d 617, 619 (1947) (internal quotations omitted). In any event, the release signed by plaintiff explicitly covered "all injuries, known and unknown, both to the person and the property, which have resulted or may in the future develop." Plaintiff makes no claim that she did not understand the release, which was clear in its terms. See *Lamoille Grain Co. v. St. Johnsbury & Lamoille County R.R.*, 135 Vt. 5, 8, 369 A.2d 1389, 1390 (1976) ("Where the language of the agreement is clear, the intention and understanding of the parties must be taken to be that which their agreement declares.").

The more probative question in this case is whether the circumstances of the agreement were so unconscionable that we should set aside the release, notwithstanding the clarity of its language and the lack of proof of a mutual mistake of fact. Plaintiff argues that the release should be disavowed for two reasons — the timing of the insurance agent's visit and the fact that she had unequal bargaining power with the agent.

■With respect to the timing issue, the Legislature has already made the value judgment that releases entered into within fifteen days may be set aside for that fact alone, as long as the release is rescinded within three years and the consideration returned. If we allowed plaintiff, who entered into a release on the tenth day following her accident, to rescind on this basis alone or to allow it to weigh heavily in determining unconscionability, we would simply be circumventing the terms of the statute.

■The release may still be avoided, however, if an element of oppression infected the bargaining process or its result, but we have been clear that unequal bargaining power alone will not nullify a contract. *Lamoille*, 135 Vt. at 8, 369 A.2d at 1391. Instead, we are primarily concerned with unequal bargaining power when the differential is used to coerce the less powerful party into agreement because that party has no other meaningful choice. See *id.* See also *In re Palmer*, 171 Vt. at 474, 769 A.2d at 630 (holding terms of bail bond were plainly unconscionable where there was unequal bargaining power *and* lack of meaningful choice). The proper inquiry is whether there is:

> evidence of some overreaching on the part of one of the parties such as that which results from an inequality in

bargaining power or under other circumstances in which there is an *absence of meaningful choice* on the part of one of the parties, together with contract terms which are unreasonably favorable to that party.

*Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986) (emphasis added).

Plaintiff complains that defendant's insurance agent was in a more powerful bargaining position based on his greater experience with whiplash injuries. Even if this allegation were true, this power differential is not enough to void the release — the power imbalance must have been used to coerce the weaker party. Here, the contract is not unconscionable because there is nothing in the record to indicate that the insurance agent coerced plaintiff into signing the release, or that plaintiff believed that she had no choice but to sign the release. Plaintiff produced no evidence showing any other circumstances, other than her desire to receive $500 for what she considered a minor injury, that compelled her *to* sign it. Indeed, in light of the nonpressing circumstances, plaintiff could have chosen not to sign the release at all, or she could have, at the very least, delayed signing the release until she had consulted a lawyer or doctor. As the court held in *Morta v. Korea Insurance Corp.*, 840 F.2d 1452, 1458 (9th Cir. 1988), "[a] person who, without coercion or undue persuasion, executes a solemn release cannot subsequently impeach it on the grounds of his own carelessness". (citations omitted). See also *Clancy v. Pacenti*, 145 N.E.2d 802, 804 (Ill. App. Ct. 1957) (in deciding whether to uphold a release, court examined the extent to which plaintiff exerted a reasonable effort to discover her injuries prior to signing); *Ranta v. Rake*, 421 P.2d 747, 753 (Idaho 1966) (whether plaintiff sought medical advice was significant factor in determining whether plaintiff was unreasonable in protecting her own interests). Because she had an opportunity for meaningful choice when the release was presented to her, any differential in bargaining power was not critical to the contract's formation and not enough to void the release as unconscionable.

In sum, plaintiff produced no evidence of extraordinary circumstances that would compel us to overcome, on common law grounds, the effect of the release entered into by the parties. Summary judgment was properly granted. *Bacon v. Lascelles*, 165 Vt. 214, 218, 678 A.2d 902, 905 (1996) ("summary judgment is appropriate only when the record clearly shows that there is no genuine issue of

material fact and that the movant is entitled to judgment as a matter of law.").

*Affirmed.*

**Morse, J.,** dissenting. Because of the overwhelming disparity of power between insurance companies and the individual, the difficulty of anticipating the long-term effects of human-tissue injuries and the potential for substantial hardship resulting from hasty settlements, our law provides that agreements for compensation entered into within fifteen days of injury "may be disavowed ... within three years after making the agreement." 12 V.S.A. § 1076; see generally Annot., *Modern Status of Rules as to Avoidance of Release of Personal Injury Claim on Ground of Mistake as to Nature and Extent of Injuries,* 13 A.L.R.4th 686, 691-98 (1982) (noting competing interests underlying rescission rules). "When an agreement is disavowed," the law further requires that the claimant "tender any consideration received to the person who paid or delivered the same." 12 V.S.A. § 1077.

Significantly, however, the law is *silent* on the means required for communicating a decision to "disavow" such an agreement, as well as on the definitive moment required for "tendering" the compensation paid. Although the statute provides for tender "when an agreement is disavowed," "when" is a notoriously imprecise modifier. See Webster's New Int'l Dictionary 2910 (2d ed. 1955) ("when" includes "[a]t the time that, during, or after the time that"). Must the claimant "tender" payment at precisely the same moment as the disavowal? May tender be accomplished a day later? A month? A year?

Despite the statutory silence, the Court holds that strict compliance with the statutes is required to invoke their protection. This holding is doubly puzzling. First, despite its holding, the Court provides no guidance as to how to comply with the notice requirements of a statute that contains no notice requirements, or how to timely tender the "consideration received" in the absence of clear time constraints. The Court would appear to require something like a written letter to the insurer, stating as follows: "I hereby disavow the agreement entered on such and such a date under the authority of 12 V.S.A. § 1077; tender of payment previously received is hereby enclosed." But the fact of the matter is that the statute does not say this; it simply says that the agreement "may be disavowed" and that "when an agreement is disavowed" the payment shall be tendered.

The puzzle is compounded by the Court's rejection out of hand of the seemingly reasonable statutory construction that would find the

agreement to have been "disavowed" when the insurer is put on notice that the plaintiff has determined to set aside the settlement and seek additional compensation. To disavow is to "deny responsibility for," "to disclaim," "to disown." See Webster's, *supra*, at 741. Why is it not reasonable to conclude that plaintiff in this case put defendant on notice that she was disavowing or disowning the settlement when she filed a lawsuit — well within the three-year time period — seeking damages from the accident totaling $100,000? Is there any doubt that defendant, at that moment, became fully aware that plaintiff was seeking to disavow the agreement? Defendant immediately invoked the agreement in its answer to the complaint, and subsequently relied on its terms in moving for summary judgment. In her opposition to the motion, moreover, plaintiff explicitly argued that the agreement should be "set aside."

All of this activity occurred well within the required three-year period of the statute. Why, then, was it insufficient to put defendant on notice that plaintiff was seeking to disavow the agreement? The Court's only answer is that plaintiff had not actually "invoked the statute" in her pleadings. 174 Vt. at 44, 800 A.2d at 489. For plaintiff to be required to intone the precise title and section of the statute substitutes ritual for effect in communication. Defendant knew exactly what plaintiff intended.

Nor does the Court indicate when precisely the tender of compensation must be received, noting only that plaintiff failed to return it "as required." *Id.* Presumably the purpose of returning the money is to prevent the plaintiff from benefitting under an agreement that she has rescinded. See, e.g., *Watson v. Bugg*, 280 S.W.2d 67, 70 (Mo. 1955) ("It is just that a plaintiff should not appropriate the benefits of a contract of settlement and deny its obligations."). Here, unless the insurer argues and proves that plaintiff incurred less than $500 in damages (the amount of the settlement), no such enrichment has occurred. Since the only means of determining plaintiff's actual damages is at trial, it would appear to be reasonable, for purposes of the statute, to allow tender of compensation at that time.

Although reason and common sense appear to support these alternative readings of the statutes, we need not rely exclusively on such reasoning. In the face of statutory silence or uncertainty, we may consult the common law, of which there is a substantial body addressing the rescission of such agreements. See *Swett v. Haig's, Inc.*, 164 Vt. 1, 5, 663 A.2d 930, 932 (1995) (statutory language of uncertain meaning will not be construed to abrogate common law

principles). Thus, we find that the issues before us were thoughtfully and comprehensively explored by the California Supreme Court in the case of *Casey v. Proctor*, 378 P.2d 579 (Cal. 1963), which concluded as follows:

> The courts, therefore, have been very liberal in allowing the releaser to meet any requirement of notice of rescission or of timely tender back of the consideration. It is generally held that *bringing suit* for the later discovered injuries is *sufficient notice* and that a tender even after the action has been filed is timely, although it is usually stated that it must be *prior to trial*. It has been recognized, and rightly so, that the important question is whether the releasee has been prejudiced by any delay.

*Id.* at 589 (emphasis added); see also H. Havighurst, *Problems Concerning Settlement Agreements*, 53 Nw. U. L. Rev. 283, 311-13 (1958) (noting that numerous courts have allowed plaintiffs to return compensation paid under settlement agreements at or during trial).

This Court has consistently held that remedial statutes should be liberally construed in favor of those who are intended to benefit from the legislation. See, e.g., *Muzzy v. Chevrolet Div., General Motors Corp.*, 153 Vt. 179, 187, 571 A.2d 609, 614 (1989) (remedial statutes "are entitled to a liberal construction in favor of those who are intended to benefit from the legislation"); *Viskup v. Viskup*, 150 Vt. 208, 211, 552 A.2d 400, 402 (1988) (remedial purpose of legislation "requires a liberal construction so as to give full force and effect to the intentions of the Legislature"). Today's holding represents a sharp departure from this salutary principle, for reasons that are not apparent from the Court's opinion or the law. Accordingly, I respectfully dissent.