Schmitt v. Force, No. 357-7-10 Wmcv (Wesley, J., Mar. 10, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**
**Windham Unit**

**CIVIL DIVISION**
**Docket No. 357-7-10 Wmcv**

**Erik Schmitt**
    **Plaintiff - Appellant**

    **v.**

**Lisa Force**
    **Defendant - Appellee**

### ORDER DENYING PLAINTIFF'S SMALL CLAIMS APPEAL

Plaintiff Erik Schmitt appeals a decision rendered by the small claims court, Acting Judge Walter G. French, on June 7, 2010, finding in favor of Defendant Lisa Force and dismissing Plaintiff's complaint in its entirety. The complaint arose out of a failed romantic relationship between Schmitt and Force, encompassing along its way various elements of landlord/tenant, contract, and tort law. After the romantic relationship ended in acrimony, and Force moved out of Schmitt's home, Schmitt sought back-rent from Force, the cost of replacing the carpet in Schmitt's home due to damage allegedly caused by Force's pet dog, and payments related to a joint purchase the two made of a mattress that is now in Schmitt's sole possession. Judge French held in favor of Defendant Force, finding that the rental agreement between the parties was illusory, the damage, if any, caused to the carpet by Force's pet was caused while Schmitt was jointly responsible for the dog and thus could not be attributed to Force, and the purchase agreement for the mattress was unconscionable and would no longer be enforced. Schmitt now appeals these determinations on various grounds. As discussed below, the Court rejects all of Appellant's claims of error and AFFIRMS the decision of the Small Claims Court.

*Discussion*

**The Small Claims Decision**

At the conclusion of the hearing, Judge French made the following findings of fact:

At some point in time in 2009, Erik Schmitt and Lisa Force began dating. They eventually moved in together, residing in Schmitt's home. Force's pet dog also moved into the home. Subsequently, the two entered into a written landlord/tenant arrangement in December, 2009. The lease agreement stated that Force would rent a partially furnished room in Schmitt's home for $400 a month.

However, Schmitt voluntarily supported Force financially during the time they were together as romantic partners and collected no rent. Instead, the parties verbally agreed that

Force would use a room in the home as a sewing room in exchange for housework, which she made use of for 3 months. Schmitt claims he could have otherwise rented the room for $350. Schmitt also did not collect a deposit from Force, although the lease agreement specified that a deposit would be collected upon execution of the agreement.

While Force's pet dog resided in Schmitt's home, both Schmitt and Force shared joint responsibility for the animal's care. On occasion, the animal would urinate on the carpet, causing damage to the carpet and flooring beneath it. Schmitt obtained an estimate for the costs of replacing the carpet in his home and for painting the wood beams below the floor. Force contended that the carpet was already in need of replacing prior to the time she and her dog moved in to the home as other dogs had previously lived in the home, there was significant damage to the carpet resulting from previous flooding, and because the house was used as a "party house" while it was in foreclosure. The carpet had not been replaced after Schmitt purchased the home.

In late November, 2009, the parties purchased a mattress from a retail furniture store in Brattleboro, Vermont for approximately $1,200. Subsequent to this purchase, the parties signed what was titled "Financial contract for a joint purchase." In this document, the parties agreed to make payments towards a financing agreement with the retail store in order to pay off the mattress purchase.

The "joint purchase" document stated that the items purchased would be the joint property of both parties for as long as they resided together. However, if the relationship ended, Force agreed to forfeit her ownership of all of the items, and the items would become the sole property of Schmitt. Force, however, would still be responsible for paying her outstanding debt.

In or around April of 2010, Schmitt obtained a Relief From Abuse (RFA) order against Force. As a result of the RFA, Force was forced to vacate the home she shared with Schmitt. Despite the RFA, Schmitt and Force kept in contact in order to determine a way for Force to retrieve her belongings. Schmitt voluntarily dropped the Relief from Abuse order so that he could help Force move her belongings out of the house.

As a result of these circumstances, Schmitt sought from Force $1,400 in unpaid rent, $1,500 to replace and repair carpeting and flooring, and $309 towards the joint purchase of the mattress. Judge French made the following conclusions of law during the small claims hearing:

Overall, Judge French found it to be "unusual" that such written documents purporting to be binding contracts were present in a relationship stemming from a romantic association. Indeed, the actions of the parties throughout the time they were together indicated to the court that so long as all was well in the relationship, the parties seemed content to let things stand as they were, and not resort to the terms of the 'contracts' they entered into.

Judge French found the contract for the joint purchase of the mattress to be unenforceable as it was unconscionable. The 'contract' provided for Schmitt to retain ownership of the items in case the relationship and co-habitation ended, but still obligated Force to maintain payments on the mattress. Judge French noted that a contract which presupposes that a romantic relationship

2

will end and which then provides for one party to receive a complete windfall upon such an occurrence is highly suspect. Moreover, the mattress and other items were already purchased prior to the execution of the contract, which calls into question the voluntariness of Force's assent or whether there was any consideration for her promise. The Court ruled that Schmitt can keep the mattress and any payments already collected from Force, but that Force would no longer be liable for any future payments.

With respect to the residential lease agreement, Judge French held it to also be void and unenforceable. As an offshoot of the romantic relationship, the Court deemed suspect Schmitt's claim that the lease was a voluntary agreement with separate support in the mutual understandings of the parties. The Court found Force's account credible when she stated that Schmitt assured her that there was no need to rent the sewing room to a third party, and that Schmitt would accept housework in lieu of rental payment from Force. The Court found that Force did in fact provide such housework prior to the filing of the RFA by Schmitt, which constructively evicted Force from the home. Moreover, the lease was executed after the two had already been co-habitating, and almost a month after the two entered into the "mattress contract." Additionally, Schmitt did not collect a rental security deposit from Force as stipulated in the lease, which further indicated to the Court that this was not a serious landlord/tenant arrangement, and thus should not now, after the relationship has failed, be enforced.

Judge French also found that Schmitt suffered no out of pocket expenses by virtue of holding onto his ex-girlfriend's property after she was effectively evicted from the home. Indeed, there was no one renting the room at the time of the hearing, suggesting to the court that the ability to find a tenant while Force's belongings were being held by Schmitt was speculative. Further, any costs relating to the storing of such property is best characterized as yet another predictable result of a failed relationship, rather than a legal obligation that Defendant was required to remit.

Lastly, the Court determined that the pet dog was the joint property of the two parties while it resided in Schmitt's home. The Court found that had the relationship not failed, the damage the dog caused would have been overlooked by Plaintiff. However, because the relationship did not succeed, the Court did not find it appropriate to now permit Schmitt to use the dog and any alleged damage it caused as a way to extract payments from Force to replace a carpet and flooring, which, as the evidence suggests, was likely already highly damaged prior to the time Force moved in.

**Standard of Review**

The scope of a Superior Court's ability to review a determination of the Small Claims Court is limited. "The appeal is limited to questions of law," and more specifically, whether the trial court applied the correct principles of law. V.R.S.C.P. 10(d).

Further, the appeal must be "based on the record made in the small claims court." 12 V.S.A. § 5538. The Superior Court must accept the factual findings of the Small Claims Court unless they are clearly erroneous. *Bartley-Cruz v. McLeod*, 144 Vt. 263, 264 (1984). As long as there is substantial evidence to support a trial court's finding of fact, deference must be ascribed

to that determination. "The evidence must be examined in the light most favorable to the prevailing party, and the effect of any modifying evidence must be excluded." *Jarvis v. Koss*, 139 Vt. 254, 254-55 (1981).

Moreover, the determination of credibility of witnesses is exclusively a matter for the trier of fact. *Lockwood v. Bougher*, 145 Vt. 329, 331 (1985). Indeed, when the evidence is conflicting, the credibility of the witnesses, the weight of the evidence, and its persuasive effect are questions for the trier of fact, and its determination must stand if supported by credible evidence, even where there may be inconsistencies or substantial evidence to the contrary. *Gilbert v. Davis,* 144 Vt. 459, 461 (1984).

**Analysis**

Schmitt raises numerous issues on appeal, all of which are without merit. First, Schmitt contends that the judgment should be reversed because he believes Judge French imposed limits on his ability to introduce evidence. Schmitt contends that Judge French should have permitted him to present additional evidence concerning e-mails about the carpet and sewing room after Judge French returned from his deliberations. The Court finds that this contention is without merit as there is nothing in the record to indicate that any unfair restraints were placed on Schmitt's ability to introduce evidence. Indeed, at the close of Schmitt's case-in-chief, Judge French asked him if he had anything else to add, to which Schmitt responded "No, that's it." Later on, after Schmitt was allowed to rebut Force's presentation, Judge French concluded by again asked whether Schmitt had anything more to add, to which Schmitt either did not reply or said 'no' to, as the transcript is not entirely clear at this point of the tape. Whatever the exact response may have been, there is nothing present in the record to indicate that Judge French improperly expedited or hurried the proceedings, or otherwise acted in any way which prevented Schmitt from being given a fair opportunity to fully present his case. Judge French was within his discretion to refuse to consider more evidence after he had already deliberated, and after asking Schmitt multiple times whether he had anything further to add.

Moreover, Judge French stated that a significant amount of evidence had already been presented by both sides which was more than sufficient for him to render a well-informed and sound ruling. See *State v. Muscari*, 174 Vt. 101, 117 (2002) (explaining that judges may impose reasonable limits on the scope of cross-examination when the relevance of the questioning becomes marginal or attenuated).

Schmitt further claims that had he been able to introduce certain e-mail correspondence between the parties into evidence, the Court would have better understood his motivations and reasons for acting in the manner that he did. Schmitt asserts that the Court would have been less suspicious of the overall contractual arrangements between Schmitt and Force. However, as stated above, the Court finds no indication that Schmitt was in any way prevented from presenting this evidence at the hearing. If in fact Schmitt had such evidence to present, there were numerous opportunities for him to do so, either in his case-in-chief, or during his rebuttal to Ms. Force's presentation. Since an appeal must be "based on the record made in the small claims court," 12 V.S.A. § 5538, the Court will not now consider evidence that Schmitt did not, despite having ample opportunity to do so, present at the hearing.

4

Plaintiff's second general complaint is an allegation of improper conduct by the court-appointed mediator, as well as the Small Claims Judge. Schmitt suggests that the mediator was partial to Force and had improper communications with Judge French prior to the hearing. Moreover, Schmitt alleges that the mediator passed notes during the hearing to Force while sitting next to her during the hearing. The failure of the mediation, for whatever reason, would not have been properly before the Court at trial, and is not a proper subject for review. V.R.E. 408 (offers of compromise not admissible); 12 V.S.A.§ 5720 (confidentiality limits of mediation process). Further, a judicial officer is presumed to be unbiased, and disqualification would have required a demonstration of bias by affirmative facts, accompanied by a proper motion for disqualification under V.R.C.P.40(e). *Ball v. Melsur Corp.*, 161 Vt. 35 (1993). Appellant's allegations of improper judicial communication with the mediator prior to the hearing, having not been preserved by raising them at the time of trial, renders the claim unreviewable on appeal. See *In re Wal-Mart Stores, Inc.,* 167 Vt. 75, 87 (1997) (facts outside record cannot be considered on appeal).

Schmitt next takes issue with Judge French's determination that the arrangement between Schmitt and Force was "suspicious." As stated above, this Court has limited discretion to review determinations made by the Small Claims Court. Here, such a credibility determination made by Judge French is strictly within the sole purview of the fact finder and will not be disturbed by the reviewing court on appeal. *Lockwood v. Bougher*, 145 Vt. 329, 331 (1985). Schmitt's contention is directed at the measure of evidence supporting Judge French's judgment. It is apparent that the testimony at the hearing was conflicting. It was, therefore, for the trier of fact to resolve the underlying issues of credibility, and without a showing that the result he reached was without evidentiary support, it must stand. *Stearns v. Sugarbush Valley Corp.,* 130 Vt. 472, 474-75 (1972); *Davis v. Schaad*, 135 Vt. 254 (1977).

Schmitt further argues that Judge French should not have found that the lease agreement was invalid and unenforceable. The existence of an agreement is a question of fact, which depends, in part, on the reasonable inferences that may be drawn from the facts of the case. *Quenneville v. Buttolph*, 2003 VT 82, 175 Vt. 444. Here, the evidence introduced by the parties clearly supported Judge French's findings. For one, the lease agreement was signed by the parties well after they had moved in together. Furthermore, Plaintiff collected no security deposit from Defendant. Whether or not this was an arrangement that both parties seriously sought to be enforceable is clearly in doubt based on the facts surrounding the relationship. When the evidence is conflicting, the weight of the evidence and its persuasive effect are questions for the trier of fact, whose determination must stand if supported by credible evidence. *Gilbert v. Davis,* 144 Vt. 459, 461 (1984). Consequently, Judge French's factual determination that the contract was void is sufficiently supported by the evidence in the record and will stand.

Schmitt next contends that he should be compensated by Force for having to store her property in one of the rooms of his house which he claims he could have otherwise rented out. However, Judge French made findings on the record that the contract was void and unenforceable, thus any legal right to storage fees under the lease agreement or landlord/tenant common law would be inapplicable. Indeed, the court found that the relationship between Schmitt and Force was far more akin to a romantic living arrangement whereby legal obligations

5

that are inherent in landlord/tenant arrangements are simply not in play. This Court finds that this determination by Judge French to be sound and not an abuse of discretion.

Schmitt next attempts to clarify certain testimony he made at the hearing which he alleges Judge French "unfairly characterized" concerning Schmitt's so-called 'suspicious' choices made in connection to the RFA he obtained against Ms. Force. However, whatever Schmitt's motivations may have been at the time, this is not the proper stage of the proceeding to introduce this evidence for the very first time. Indeed, Schmitt's attempts to "clarify" his testimony have no place on appeal. Schmitt was given more than an adequate opportunity to present all relevant evidence, articulate the motivations of his actions, and to even rebut Ms. Force's case-in-chief. The Court will not now entertain new evidence and arguments here on appeal.

Similarly, Schmitt chronicles in his appeal memorandum how he feels he is being punished for his generosity, after determining that it would be in Force's best economic interests for her belongings to remain in his home after he filed the RFA against her, rather than be placed in storage. However, it is not the role of this Court to judge the generosity of parties, or to make other determinations of credibility. As alluded to above, such a finding can only be made by a trier of fact

Schmitt next objects to findings made by Judge French concerning the pet dog that resided with Schmitt and Force, which allegedly caused damage to the carpet that Schmitt seeks replacement costs for. Specifically, Schmitt objects to the Court's determination that the dog was the joint responsibility of the parties, and also seeks to introduce new evidence which supposedly establishes that Force had previously agreed to contribute to the cost of replacing the carpet. These grounds for appeal are wholly without merit. Judge French made a factual determination that the dog was jointly cared for by the parties which will not be disturbed by this Court absent clear abuse of discretion. Here, the mere fact that Schmitt permitted Force to move in along with her dog while the two were in a romantic relationship strongly suggests that Schmitt assumed responsibility for the animal. Further, the Court at this stage simply cannot take into consideration new evidence that was not introduced during the hearing below. Accordingly, Judge French's conclusion will be upheld.

Lastly, Schmitt asks this Court to reverse Judge French's determination that the joint purchase of the mattress was unconscionable and void. Schmitt alleges that Judge French made incorrect conclusions based solely on the date of the contract and a single provision that was more favorable to him than to Ms. Force. As a matter of law, the proper inquiry in determining if an agreement is unconscionable is whether there is evidence of some overreaching on the part of one of the parties such as that which results from an inequality in bargaining power or under other circumstances in which there is an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to that party. *Maglin v. Tschannerl*, 174 Vt. 39, 45-46 (2002). Here, Judge French determined that, due to the suspect nature of the circumstances surrounding the arrangement, there was serious doubt raised as to whether Force had a meaningful choice when signing this agreement, *i.e.*, the fact that the contract was signed *after* the mattress was already purchased and *after* the parties had already moved in together. Furthermore, the contract terms are clearly unreasonably favorable to the party enjoying the superior bargaining position, in that Schmitt is awarded sole possession of the

mattress in the event that the parties break up, while Force, nevertheless, remains liable for making payments on a possession for which she must forfeit all claims of ownership regardless of the circumstances attending the failed relationship. Indeed, in light of the findings of undue influence arising from the parties' domestic relationship, the mattress arrangement affords a textbook example of an unconscionable contract. Judge French was clearly within his discretion when he rendered the contract unconscionable and void and his decision will not be overturned.

**WHEREFORE**, it is hereby **ORDERED**:

Plaintiff's Small Claims Appeal is **DENIED**, and the decision of the Small Claims Court is **AFFIRMED**.

Dated at Newfane this 10th day of March, 2011.

_____
John P. Wesley
Superior Court Judge