### Barbara A. Ferris v. Cyrus Y. Ferris

[433 A.2d 304]

No. 129-80

Present: Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.

Opinion Filed June 12, 1981

*Edwin W. Free, Jr.,* of *Richard E. Davis Associates, Inc.,* Barre, for Plaintiff.

*Cheney & Brock,* Montpelier, for Defendant.

**Hill, J.** The parties to this action were divorced in 1972. A stipulation regarding alimony was incorporated into the decree whereby plaintiff, Barbara Ferris, was to receive $8,500.00 per year. Payments were to terminate upon occurrence of any

one of certain events, including the inheritance by plaintiff of her mother's estate. Also, alimony payments were to be reduced by such amounts as plaintiff received from any sources resulting from lifetime gifts from, or trusts created by, her mother, or from any outright bequests arising from her mother's death.

Plaintiff's mother, Violet Healy, was alive at the time of the 1972 divorce. She had made a will in 1964 establishing a trust of all her assets with plaintiff as sole beneficiary. In 1969, Violet Healy executed a codicil calling for cash bequests to plaintiff and her three children in the amount of $15,000 each. The remainder of the will was unaltered. Shortly thereafter, Violet Healy suffered a second, crippling stroke. Both parties admit they assumed she was thereafter incompetent to rewrite her will or to make a valid lifetime transfer of property.

During the interim between the 1964 execution of the will and her second stroke, Violet Healy's first huband died and she married Francis X. Healy. Unbeknownst to the parties, Violet Healy before her death in 1975 transferred to the joint ownership of Francis and Violet Healy her certificates of deposit, which had amounted to $180,000 at the time of the 1972 stipulation between the parties. Also, Violet Healy had drawn a new will leaving all her remaining estate to her husband.

Amidst a will contest and accusations that Francis X. Healy had used undue influence in causing his wife to rewrite her will, negotiations ensued between Francis X. Healy and plaintiff. An irrevocable trust was established providing for substantially the same result as Violet Healy's original will envisioned except that Francis X. Healy was named the first life beneficiary. Francis X. Healy died in late 1977 or early 1978. Plaintiff is currently life beneficiary of the trust and received income therefrom of $8,925.20 in 1978.

Defendant terminated alimony payments when plaintiff commenced receipt of monies from the trust. Plaintiff moved to find defendant in contempt for refusing to pay $3,541.65 in payments she claimed were owed. She prayed that defendant be ordered to pay that amount and, due to changed circumstances caused by inflation, requested that alimony payments be increased. Defendant countersued, requesting that the court adjudge that he was not liable for past alimony payments and terminate his future obligation.

The lower court concluded that the conditions specified in the divorce stipulation to bring about an end to alimony payments substantially occurred when plaintiff received money from the trust. It thereby ordered plaintiff to return $7,508.50 to defendant reflecting an overpayment of alimony in 1978 and terminated future payments.

Plaintiff claims that she has not received any income from lifetime gifts from, or trusts created by, her mother as specified in the divorce stipulation. The income, she contends, was from a trust created by an intervenor, Francis X. Healy. Citing *Braine* v. *Braine*, 127 Vt. 211, 213, 243 A.2d 797 (1968), plaintiff urges this Court to preclude a rewriting of the contract terms involved in the divorce settlement.

In *Braine*, this Court noted a reluctance to alter an arrangement stipulated to by the parties to a divorce. Noting the similarity with a commercial contract agreement, we stated: "For the parties have contracted, and, if modification is freely indulged or granted without warrant, a party may have forfeited rights or positions of advantage for consideration that suddenly becomes insecure or inadequate." *Id.* at 213, 243 A.2d at 799.

■■ The case at bar, however, presents a tangent to the *Braine* situation. Both parties when they agreed to the divorce arrangements felt that Violet Healy had become incapacitated from illness and thus could not revise her will. Based upon that circumstance, the parties came to a mutually satisfactory settlement. That aspect of the parties' consideration, however, was not accurate, and where a contract has been entered into under a mutual mistake regarding a material fact, the contract may be avoided in a court of law. *Enequist* v. *Bemis*, 115 Vt. 209, 212, 55 A.2d 617 (1947). "The mistake must be one vitally affecting a fact or facts on the basis of which the parties have contracted; and where they have mutually assumed a certain state of facts to exist and contracted on the faith of that assumption, relief from the bargain should be given if the assumption is erroneous." *Id.*

■■ The evidence clearly reveals circumstances intervening beyond the expectation of the parties. When such a situation is presented, a court may exercise discretion in amending an alimony agreement. See *Braine, supra*, 127 Vt. at 214, 243

A.2d at 799–800. Consequently, the modification reached by the lower court is affirmed.

Appellee also asks this Court to consider whether a former husband's obligation to pay alimony continues if those funds are used by his former spouse to support a new live-in companion. Since the case is adequately disposed of on other grounds, we need not address that issue.

*Affirmed.*