2003 VT 8

## UNIVERSAL UNDERWRITERS INSURANCE COMPANY v. ALLSTATES AIR CARGO, INC., Stoweflake Resort and Conference Center, and Baraw Enterprises, Inc.

[820 A.2d 988]

No. 01-262

¶ 1. February 3, 2003. Defendant carrier Allstates Air Cargo, Inc. (Allstates) appeals from the decision of the Lamoille Superior Court granting plaintiff-shipper Universal Underwriters Insurance Company's (UUIC) motion in limine to preclude Allstates from relying upon a limitation of liability provision on Allstates' airbill. The issue arose in litigation between them over damage and loss of part of UUIC's computer equipment while being shipped by Allstates. Allstates argues that the limitation of liability provision is enforceable under the "released value" doctrine of federal common law. We do not agree, and affirm.

¶ 2. Allstates is an interstate freight forwarder based in New Jersey. Allstates has done business with UUIC, an insurance company based in Kansas, for at least fourteen years, typically shipping printed material for UUIC. When shipping with Allstates, UUIC utilized preprinted airbills that Allstates delivered to UUIC approximately once a month. The front of UUIC's copy of the airbill contained blank spaces for information about the shipment, to be filled out by UUIC, including a box for "declared value." The back set forth the "CONDITIONS OF CONTRACT FOR FREIGHT AIR-BILLS," printed in relatively small type. Among these conditions was a limitation of liability provision, as well as the statement that "[s]hipper may declare a higher value on the entire shipment, in which case an additional transportation

charge as set forth in the Allstates Air Cargo Rules Tariff shall be required." The front of the airbill contains no reference to the printed conditions on the reverse side.

¶ 3. On August 11, 1999, UUIC contracted with Allstates for the shipment of twenty-four cartons containing laptop computers and associated software and computer hardware from UUIC's Kansas headquarters to the Stoweflake Resort and Conference Center (Stoweflake) in Stowe, Vermont, where UUIC was holding a conference. The shipment was arranged by Rachel Oitker, UUIC's customer service manager, who had used Allstates' services many times before. Ms. Oitker completed Allstates' pre-printed airbill for the shipment, inserting the figure "$250,000" in the box for declared value. The airbill was picked up by an Allstates representative along with the shipment.

¶ 4. The shipment was transported by air to Boston, Massachusetts, then by truck to the Stoweflake, arriving on August 13, 1999. It was placed in a locked conference room overnight. The following day, UUIC discovered that several of the cartons had been damaged and that ten laptop computers and one printer were missing. UUIC informed Allstates of the loss and requested that Allstates indemnify it for the value of the lost goods, as provided for in the contract. Allstates refused, and UUIC subsequently brought suit against Allstates for breach of contract and negligence, and against Stoweflake and its corporate owner, Baraw Enterprises, Inc., for negligence.

¶ 5. Before trial, UUIC filed a motion in limine to preclude Allstates from relying on the limitation of liability provision set forth in Paragraph 7 on the reverse side of the airbill. Paragraph 7 stated:

> In consideration of Carrier's rate for the transportation of any shipment, which rate, in part, is dependent upon the value of the shipment, the shipper and all other parties having an interest in the shipment agreed that the limit of Carrier's liability shall be the lesser of:
>
> (1) the amount of any damages actually sustained; or
>
> (2) (a) where no value is declared, 50¢ per pound multiplied by the number of pounds (or fraction thereof) of those piece(s) of the shipment that may have been lost, damaged or delayed (or $50.00 whichever is greater), or
>
> (b) where a higher value is declared, (i) in the case of loss, damage or delay of the entire shipment, the declared value of the shipment; (ii) in the case of the loss, damage or delay of part of the shipment, the average declared value per pound of the shipment multiplied by the number of pounds of that portion of the shipment which may have been lost, damaged or delayed. When damage is of a concealed nature payment will be made at 50% of repair or replacement cost, not to exceed the declared value.

Under Paragraph 7(2)(b)(ii), UUIC's damages would be limited to $19,682.52, as opposed to the approximately $42,000 that the jury found was the actual value of the lost goods. This reduction occurred because the provision required, in a partial loss situation, that the declared value be allocated by weight irrespective of the actual value of the damaged or lost items.

¶ 6. At the close of the evidence, the trial court entertained argument on UUIC's motion. The court ruled that the limitation of liability provision was unenforceable as a matter of law, and declined to instruct the jury on limitation of dam-

ages. The jury exonerated Stoweflake and returned a verdict against Allstates for $41,893.09. Allstates subsequently brought this appeal.

¶ 7. On review, since construction of a contract is a matter of law and not a factual determination, "this Court must make its own inquiry into the proper legal effect of the terms of the agreement, employing the trial court's valid findings of fact." *Gannon v. Quechee Lakes Corp.*, 162 Vt. 465, 469, 648 A.2d 1378, 1380 (1994) (citations omitted). In actions such as this, where an interstate air carrier is sued for lost or damaged shipments, this Court is bound to apply federal common law. See *Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys., Inc.*, 235 F.3d 53, 59 (2d Cir. 2000); *Read-Rite Corp. v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1195-99 (9th Cir. 1999); *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 928-29 (5th Cir. 1997); *Arkwright-Boston Mfrs. Mutual Ins. Co. v. Great Western Airlines, Inc.*, 767 F.2d 425, 427 (8th Cir. 1985); *First Pennsylvania Bank, N.A. v. Eastern Airlines, Inc.*, 731 F.2d 1113, 1119-22 (3d Cir. 1984).

¶ 8. Under the "released value" doctrine of federal common law, an air carrier may limit its liability for lost or damaged goods on a "released valuation" basis: "In exchange for a lower shipping rate, the shipper is deemed to have released the carrier from liability beyond a stated amount." *Kemper Ins. Cos. v. Fed. Express Corp.*, 252 F.3d 509, 512 (1st Cir. 2001). Pursuant to this doctrine, contractual provisions attempting to limit carrier liability for lost or damaged cargo are valid and enforceable only if they "(1) are set forth in a reasonably communicative form, so as to result in a fair, open, just and reasonable agreement between carrier and shipper; and (2) offer the shipper a possibility of higher recovery by paying the carrier a higher rate." *Nippon Fire*, 235 F.3d at 59-60 (internal quotation marks omitted); see also 3 S. Sorkin,

Goods in Transit § 13.07[1], at 13-115 (2002). In evaluating whether these requirements have been met, courts have considered the following factors: "(1) whether the carrier has given adequate notice of the limitation of its liability to the shipper; (2) the economic stature and commercial sophistication of the parties; and (3) the availability of 'spot' insurance to cover a shipper's exposure." *United States Gold Corp. v. Fed. Express Corp.*, 719 F. Supp. 1217, 1225 (S.D.N.Y. 1989) (citing cases).

¶ 9. We find that Allstates' attempt to limit its liability does not satisfy the requirements of either element of the released value doctrine. As UUIC argued, the main deficiency of the airbill was that all the negotiated terms, including the consignee's signature, were on one side of the document and the conditions were on the reverse side. There is no provision on the front incorporating the terms from the rear or even a warning that such terms are present. Although we find no case involving precisely this situation under the federal common law governing carrier liability, the general applicable law is:

> Where the signature is at the end of the instrument, it is generally plain that it authenticates everything above it. Where, however, written or printed matter appears below the signature, or on the back of the instrument, or on separate sheets of paper, a signature authenticates only the matter intended by the parties to be included as a part of the instrument. The intention must be manifested either by express reference or by internal evidence in the writings involved from which an inference of such intention follows.

*Brown v. State Auto. Ins. Ass'n*, 12 N.W.2d 712, 716 (Minn. 1944); see also

*Thermo-Sav, Inc. v. Bozeman,* 782 So. 2d 241, 243 (Ala. 2000) (where provision requiring arbitration was on reverse side of form contract with "no indication on the front of the contract that additional provisions appeared on the back of the contract and that those additional provisions were a part of the contract," arbitration provision was not part of the contract); *Huebsch Laundry Co. v. DeLuxe Diecutting, Inc.,* 2001 WL 138996, at *2 (Minn. Ct. App. Feb. 20, 2001) (where liquidated damage clause was on reverse side of the agreement, with no reference to it on the front and no internal evidence that it is part of the contract, it is unenforceable). In this case, there is no express reference on the front of the document. Nor is there internal evidence in the writings that UUIC adopted the language on the reverse side. Cf. *Monsanto Co. v. McFarling,* 302 F.3d 1291, 1296 n.3 (Fed. Cir. 2002) (forum selection clause enforceable where contract stated above signature line that signer had read and understood all the contract terms and conditions and all terms and conditions were on the reverse side of the document), *petition for cert. filed,* 71 U.S.L.W. 3444 (U.S. Dec. 27, 2002) (No. 02-971).

¶ 10. Looking beyond whether the limitation of liability can be said to be part of the contract, we are troubled by the lack of a highlighted warning that such a limitation is present. The actual limitation provision was located in small print, in the middle of a subparagraph, without a heading or any textual features such as capital letters or bold print highlighting the limitation. See *KPC Corp. v. Book Press, Inc.,* 161 Vt. 145, 151, 636 A.2d 325, 329 (1993) (in considering whether a party has been unfairly surprised by contract term, one consideration is whether terms were hidden in fine print); see also *Young v. Continental Crane & Rigging Co.,* 53 P.3d 465, 468-69 (Ore. Ct. App. 2002) (even where front of agreement contains reference to the terms on the reverse side, an indemnity provision printed in very light ink on the back of the form and mixed in with other provisions is not conspicuous and, therefore, is not enforceable). The liability limitation in the present case stands in stark contrast to the prominent provisions that have been upheld in previous cases. See, e.g., *Owens-Corning Fiberglas Corp. v. U.S. Air,* 853 F. Supp. 656, 665 (E.D.N.Y. 1994) (finding adequate notice of liability limitation where front side of airbill referred to liability limitation provision printed on back); *ZYX-Ware Int'l v. Fed. Express Corp.,* 1994 WL 904684, at *2 (N.D. Cal. Jan. 5, 1994) ("notice was reasonably clear and conspicuous" where limitation on liability was printed on front of airbill in bold capital letters and referred shipper to back of bill where further details of liability limitation reprinted under bold capital headings); *Hill Constr. Corp. v. American Airlines, Inc.,* 996 F.2d 1315, 1318 (1st Cir. 1993) (upholding liability limitation provision set forth on back of airbill in ordinary size print and referred to on front); *Husman Constr. Co. v. Purolator Courier Corp.,* 832 F.2d 459, 461-62 (8th Cir. 1987) (shipper provided adequate notice of liability limitation where provision was referred to on front of bill of lading and was printed on back with "LIMITATION OF LIABILITY" heading and with other terms in capital letters).

¶ 11. The inconspicuous placement of the liability limitation provision on the rear side of the airbill also affects the second element of the released value doctrine: whether the shipper offered a higher recovery in return for a higher rate. Thus, "[l]imited liability provisions are prima facie valid if the face of the contract (or, in this case, air waybill) recites the liability limitation and the means to avoid it." *Read-Rite Corp.,* 186 F.3d at 1198 (internal quotation marks omitted). As a result, the burden shifts to the shipper to prove that the shipper could not purchase liability coverage.

Here, the presumption of validity did not apply because the liability limitation was not on the face of the airbill, either directly or by reference, and Allstates retained the burden to show UUIC had an alternative method of obtaining full coverage.

¶ 12. We do not believe that Allstates discharged that burden. Unlike virtually all the reported cases, the shipper here fully reported the value of the shipped items and paid a shipping price accordingly. The terms on the reverse side of the airbill stated no outside limit on Allstates' liability. The dispute arises from the allocation of the liability limit by weight. In a mixed shipment, the shipper is able to recover the full value of a lost or damaged item only if the ratio of the weight of an item to its value is higher than average for the shipment.

¶ 13. We agree with Allstates' claim that UUIC could have declared a higher value, paid a greater tariff and left Allstates with full liability. We do not find that a reasonable option. Allstates asserts that the liability limitation provision would cap its liability at less than 50% of actual value. Based on that assertion, UUIC would have had to declare the value of the shipped goods at over double what they were actually worth to obtain full liability in this case. We do not know that a double-value declaration would have ensured full recovery in all situations. For example, the shipment might have contained some software of high value and little weight. The declaration necessary to ensure recovery for any possible loss might have been many multiples of the actual value of the shipped items. For all this record shows, the cost to ensure full liability in any scenario may have exceeded the value of at least some of the items shipped. For no understandable economic reasons, the shipper is obtaining a windfall simply because multiple items are being shipped and they are not homogeneous. Moreover, the shipper cannot readily determine what value to declare to maximize liability in relation to cost.

¶ 14. Although we do not have to reach UUIC's argument that the liability limitation is against public policy if the carrier doesn't specifically notify the shipper of that provision, Allstates' response shows the weakness of its position. Relying on the underlying theory of the released value doctrine that a limitation of liability was "a consequence of the calculation of the transportation charge based upon the agreed value, rather than an exculpation from negligence," *First Pennsylvania Bank*, 731 F.2d at 1116, Allstates argues "the carrier [is] entitled to know the extent of its potential liability for loss of the property and to be compensated in proportion to the risk assumed." *Shippers Nat'l Freight Claim Council, Inc. v. ICC*, 712 F.2d 740, 746 (2d Cir. 1983). We agree, but Allstates' argument cuts against it. Allstates assumed a risk exposure of $250,000, not the $19,682 it is prepared to pay. It never asked whether the different items in the shipment were of different weights or values, and nothing on the airbill suggests that the makeup of the shipment, as opposed to its aggregate weight and value, affected the price Allstates charged to ship it. Allstates was fully compensated for the risk it assumed without the liability limitation provision.

¶ 15. We note that Allstates could have demonstrated alternative approaches to ensure liability coverage. For example, Allstates could have demonstrated that, as an alternative to liability based on a declaration of value, UUIC could have purchased liability insurance that would have fully covered it in case of any damage or loss. As another alternative, Allstates might have shown that UUIC could have broken down the items into more than one shipment so that the allocation of liability problem was reduced or eliminated. Allstates made no such showing.

¶ 16. We acknowledge that this case is made closer because, as the trial court stated, "we are dealing with a corporate plaintiff versus a corporate defendant," and these parties have a significant history of prior dealings using this same airbill. The employee of UUIC who prepared the airbill had used Allstates' form many times and was aware that conditions were printed on the back. However, the superior court found that she was not aware of the liability limitation provision and thought she was buying insurance with the airbill. As UUIC notes, its prior dealings consisted primarily of the shipment of printed material, and it was not sophisticated in the shipping of lightweight, high-value goods. See *Welliver v. Fed. Express Corp.*, 737 F. Supp. 205, 208 (S.D.N.Y. 1990) (plaintiff not sophisticated shipper, having made limited shipments with carrier, none of which "involved items that were irreplaceable or of significant value" as were items involved in litigation). We agree with the superior court that the former dealings between the parties and the employee's knowledge were relevant factors, but also agree that they are not determinative in these circumstances.

*Affirmed.*