NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 78

No. 24-AP-046

| | |
|---|---|
| Joan Falcao | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Grand Isle Unit, |
| | Civil Division |
| | |
| Mitchel Richardson | September Term, 2024 |

Samuel Hoar, Jr., J.

Evan Barquist of Montroll, Oettinger & Barquist, P.C., Burlington, for Plaintiff-Appellant.

Chad V. Bonanni of Bergeron, Paradis & Fitzpatrick PC, Essex Junction, for Defendant-Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **CARROLL, J.** Plaintiff appeals a trial court decision declining to enforce a promissory note with an attorney's-fees provision signed by defendant. Following a bench trial, the court concluded the promissory note did not accurately reflect an agreement among the parties and instead awarded plaintiff damages and prejudgment interest under a theory of unjust enrichment. Plaintiff argues the trial court erred in declining to enforce the promissory note according to its plain terms because it considered the circumstances surrounding the agreement absent any finding of ambiguity and that the promissory note is not otherwise unconscionable. We agree, reverse the trial court's decision, and hold that the promissory note is enforceable according to its terms.

¶ 2. The following facts are drawn from the trial court's findings relevant to this appeal. Plaintiff and her partner own Health Hero Farm LLC, which in turn owns a beef farm in

South Hero, Vermont. In partnership with a local family experienced in farming, Health Hero Farm LLC purchased the land for the farm from the Vermont Land Trust. It was this partnership, particularly the local family's farming experience, that allowed Health Hero Farm LLC to purchase the land from the Vermont Land Trust. The Vermont Land Trust retained a conservation easement on the property and an option to purchase the land at agricultural value.

¶ 3. After some time, the partnership between Health Hero Farm LLC and the local family went awry so plaintiff and her partner sought a way to buy the local family out. They were eventually able to reach an agreement, and thus plaintiff and her partner became the sole owners of Health Hero Farm LLC and the underlying property.

¶ 4. During this time, plaintiff and her partner befriended defendant, who owned a local auto-repair shop and had his own small farm where he raised beef cattle. The parties collaborated informally for some time, including attending farming seminars together. While plaintiff and her partner were ending their partnership with the local farming family, plaintiff and her partner began to discuss with defendant the possibility of forming a partnership with him. Plaintiff, her partner, and defendant never reached a formal arrangement regarding the nature of their relationship. However, plaintiff represented to others, including the Vermont Land Trust, that she and her partner were partnering with defendant. This was critical because plaintiff and her partner were concerned the Vermont Land Trust would not approve their buyout of the local family without replacing them with someone with similar farming experience.

¶ 5. Both plaintiff and defendant had an interest in improving bovine genetics on their respective farms and began exploring the possibility of purchasing Galloway cattle. Plaintiff and defendant agreed on the type of cattle to purchase, and plaintiff agreed to advance the funds for the purchase of the cattle. Plaintiff insisted on a written agreement for this arrangement.

¶ 6. Plaintiff first sent defendant a proposal via email in which she and her partner would purchase the cattle and board them at Health Hero Farm until defendant was able to reimburse them for the purchase price plus boarding expenses. This proposed arrangement also

2

consisted of sharing farming resources, including labor and equipment. Defendant rejected this proposal. Plaintiff then proposed another agreement: "a simple promissory note," the terms of which are not in the record below. Defendant also rejected this agreement, stating he preferred a handshake agreement instead.

¶ 7. When the time came to purchase the cattle and pick them up from the breeder in Canada, Plaintiff wired $16,000 directly to the breeder. On the way to pick up the cattle, defendant stopped at plaintiff's farm to sign paperwork. Among this paperwork, plaintiff included another proposed promissory note requiring defendant to reimburse plaintiff for the purchase price of the cattle. Plaintiff asked defendant whether he was going to read the papers before signing them. Defendant replied, in sum, "why would I; I trust you. Don't you trust me?" Defendant signed all the paperwork, including the promissory note, without reading it. The signed promissory note included an attorney's-fees provision, requiring the defendant to pay plaintiff's collection-related attorney's fees in the event of his default.

¶ 8. The cattle were purchased and kept at Health Hero Farm until the parties no longer shared a mutual understanding and their relationship soured. Defendant moved all his farming equipment off Health Hero Farm and transferred the cattle to his property.

¶ 9. Plaintiff brought suit to collect on the terms of the promissory note. After a three-day bench trial, the trial court declined to enforce the promissory note according to its terms, but rather relied on a theory of unjust enrichment. Specifically, the trial court concluded "at no time during the conversation leading up to the creation and signing of the note did [plaintiff] suggest, or [defendant] agree, that attorney's fees would be part of any arrangement between them." The court concluded, considering the surrounding circumstances of the parties' relationship, that the promissory note did not "accurately reflect an agreement between" the parties despite defendant having signed it. The court noted that there was no evidence the parties had discussed the terms of the note and declined to enforce it because the promissory note "was a contract of adhesion that was presented to [defendant] in a sheaf of papers by one in a clearly stronger negotiating

3

position." Instead, the court relied on a theory of unjust enrichment, determining "it was never anyone's contemplation that [defendant] would end up owning the Galloways without compensating [plaintiff] for that contribution," and awarded plaintiff $16,000—the purchase price of the cattle—plus prejudgment interest. See Beldock v. VWSD, LLC, 2023 VT 35, ¶ 78, __ Vt. __, 307 A.3d 209 ("Unjust enrichment provides relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation." (quotation omitted)).[1] Plaintiff appealed to this Court.

¶ 10. On appeal, plaintiff argues the trial court erred in declining to enforce the promissory note according to its written terms, particularly the attorney's-fees provision. She contends the promissory note is unambiguous and the trial court therefore erred in considering the circumstances surrounding the formation of the agreement absent a finding of ambiguity. Plaintiff also asserts the promissory note is not a contract of adhesion and argues the promissory note is not otherwise unconscionable. Finally, plaintiff argues the trial court made erroneous factual findings. We agree and hold that the promissory note is unambiguous and therefore enforceable according to its terms and the circumstances surrounding the agreement are not otherwise unconscionable. We do not address plaintiff's challenges to the court's factual findings as the disputed findings are not dispositive to the outcome of this appeal.

¶ 11. "The existence of a contract . . . is a question of fact" which we will only set aside if the findings by the trial court are clearly erroneous when viewed in the light most favorable to the prevailing party below. Theberge v. Theberge, 2020 VT 13, ¶ 7, 211 Vt. 535, 228 A.3d 998. However, the construction and interpretation of a contract, including whether a contract is ambiguous or unconscionable, are questions of law, which we review de novo. Universal Underwriters Ins. Co. v. Allstates Air Cargo, Inc., 2003 VT 8, ¶ 7, 175 Vt. 475, 820 A.2d 988

---

[1] We do not address the remainder of the trial court's order, including counterclaims and the rejection of both parties' Prompt Pay Act claims, as it was not contested on appeal.

(mem.). "[T]his Court must make its own inquiry into the proper legal effect of the terms of the agreement, employing the trial court's valid findings of fact." Id. (quotation omitted).

¶ 12. Our overall goal when interpreting a contract is to "implement the parties' intent." Dep't of Corr. v. Matrix Health Sys., P.C., 2008 VT 32, ¶ 12, 183 Vt. 348, 950 A.2d 1201. However, "[w]hen the language of the contract is clear on its face, we will assume that the intent of the parties is embedded in its terms." Id. (quotation omitted). Thus, if the contract is "unambiguous . . . the plain language controls as a matter of law." Beldock, 2023 VT 35, ¶ 27.

¶ 13. The language of the promissory note is clear and unambiguous, and the parties do not dispute the meaning or the interpretation of the terms contained within it. See Isbrandtsen v. N. Branch Corp., 150 Vt. 575, 577, 556 A.2d 81, 83 (1988) ("A provision in a contract is ambiguous only to the extent that reasonable people could differ as to its interpretation."). Therefore, we assume the intent of the parties is embedded within the terms.

¶ 14. The trial court recognized defendant's failure to read the promissory note before signing it resulted in defendant's unawareness of the attorney's-fees provision. While true that "[a]n enforceable contract requires a meeting of the minds of the parties" meaning "an offer by one of them and an acceptance of such offer by the other," Sweet v. St. Pierre, 2018 VT 122, ¶ 12, 209 Vt. 1, 201 A.3d 978 (quotation omitted), failure to read a contract before signing it is not a defense to enforcement. See 2 Williston on Contracts § 6:49 (4th ed. 2024) ("[W]here an offeree signs a document [he] is generally held to be bound by the document's terms, even if the offeree signs in ignorance of those terms."). Contracting parties have "the basic responsibility . . . to review a document before signing it." Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 34 (2d Cir. 1997). We have recognized that in signing a contract without reading it, a person is essentially "agreeing to the terms whatever they may be." Lamoille Grain Co v. St. Johnsbury & Lamoille Ctny. R.R., 135 Vt. 5, 9, 369 A.2d 1389, 1391 (1976). And by agreeing, "parties are charged with knowledge of the contents of their contract." Johnson v. Hardware Mut. Cas. Co., 108 Vt. 269, 281, 187 A. 788, 794 (1936).

5

¶ 15. Defendant's failure to read the promissory note before signing it, and after plaintiff encouraged him to do so, without more, is not a defense to enforcement. By signing the promissory note defendant agreed to the terms contained within, including the attorney's-fees provision, regardless of whether he read it or was unaware of its contents. See Upton v. Tribilcock, 91 U.S. 45, 50 (1875) ("It will not do for a man to enter into a contract, and, when called upon to respond to its obligations to say that he did not read it when he signed it, or did not know what it contained.").

¶ 16. Generally, once accepted, parties "are bound by the clear and unambiguous terms of [their contract]." Johnson, 108 Vt. at 281, 187 A. at 794. However, a contract may still be set aside if "the circumstances of the agreement were . . . unconscionable." Maglin v. Tschannerl, 174 Vt. 39, 45, 800 A.2d 486, 490 (2002). "[W]hether [a] contract is unconscionable may turn on substantive fairness of terms or factors relevant to formation of [a] contract, such as unequal bargaining power or lack of opportunity to read [the] contract." In re Palmer, 171 Vt. 464, 474, 769 A.2d 623, 630 (2000) (citing Val Preda Leasing, Inc. v. Rodriguez, 149 Vt. 129, 135, 540 A.2d 648, 652 (1987)). We consider a "party's relative business experience and education, the party's opportunity to understand the terms of the contract, and whether the terms were hidden in fine print" when determining if a party was unfairly surprised by a contract term. KPC Corp. v. Book Press, Inc., 161 Vt. 145, 151, 636 A.2d 325, 329 (1993); Lamoille Grain Co., 135 Vt. at 9, 369 A.2d at 1391 (noting inquiry is whether parties had "reasonable opportunity to understand the terms of the contract, or [if] the important terms [were] hidden in a maze of fine print and minimized by deceptive sales practices" (quotation omitted)).

¶ 17. Still, we have reiterated "unequal bargaining power alone will not nullify a contract." Maglin, 174 Vt. at 45, 800 A.2d at 490; Lamoille Grain Co., 135 Vt. at 8, 369 A.2d at 1391 (recognizing "practically every contract negotiation involves parties with some bargaining disparity"). Any differential in bargaining positions is relevant to the extent it was "used to coerce the less powerful party into agreement because the party has no other meaningful choice."

6

Maglin, 174 Vt. at 45, 800 A.2d at 490; see Contract, Black's Law Dictionary (12th ed. 2024) (defining contract of adhesion as "[a] standard-form contract prepared by one party, to be signed by another party in a weaker position . . . who must essentially either accede [] to the terms or not have a contract at all"); Klos v. Lotnicze, 133 F.3d 164, 168 (2d Cir. 1997) ("[C]ontract of adhesion is a contract formed as a product of gross inequality of bargaining power . . . [and when one party] used high pressure tactics or deceptive language" (citation and quotation omitted)). Thus, the plain language of an unambiguous contract prevails absent a "showing of unfairness, undue oppression or unconscionability." Klos, 133 F.3d at 169.

¶ 18.    Here, the trial court concluded "the surrounding circumstances ma[de] clear that the note was a contract of adhesion, presented to [defendant] in a sheaf of papers by one in a clearly stronger negotiating position" and declined to enforce the promissory note. However, evidence of unequal bargaining power or lack of a meaningful choice by defendant is lacking. The promissory note in dispute was the third agreement plaintiff proposed to defendant. In fact, defendant rejected the two prior versions plaintiff proposed demonstrating he felt he was in an equal bargaining position or was at least aware of his ability to reject plaintiff's proposals. Moreover, the trial court's finding that defendant's involvement with Health Hero Farm was key to the farm's continued operation suggests defendant had bargaining power despite plaintiff financing the purchase of the cattle.

¶ 19.    Even so, any unequal bargaining power or power differential between plaintiff and defendant is not enough to nullify the promissory note. There was no evidence defendant was compelled to sign the promissory note, or lacked any meaningful choice, other than by his own desire to purchase the cattle. See Maglin, 174 Vt. at 46, 800 A.2d at 491 (recognizing no unconscionability when "in light of the nonpressing circumstances, [the] plaintiff could have chosen not to sign the release at all, or she could have, at the very least, delayed signing the release until she had consulted a lawyer or doctor"). Defendant could have rejected the promissory note as he had done so two times prior. He could have read the promissory note after

plaintiff encouraged him to do so. Defendant cannot claim he was unfairly surprised by the terms of an agreement he had the opportunity to read but elected not to. See KPC Corp., 161 Vt. at 152, 636 A.2d at 329; Lamoille Grain Co., 135 Vt. at 9, 369 A.2d at 1391.

¶ 20. Further, the terms of the promissory note, particularly the attorney's-fees provision, were not hidden in fine print and were not otherwise substantively unfair or unreasonably favorable to plaintiff. See, e.g., Glassford v. BrickKicker, 2011 VT 118, ¶ 13, 191 Vt. 1, 35 A.3d 1044 (finding arbitration clause unconscionable because "binding arbitration costs . . . would exceed the amount of the liability limit"); Mongeon Bay Props. LLC v. Mallet's Bay Homeowner's Ass'n, 2016 VT 64, ¶ 43, 202 Vt. 434, 149 A.3d 940 ("We decline to adopt a per se rule that unilateral attorney fee-shifting clauses in contracts are unenforceable."). Absent other evidence of coercion or lack of meaningful choice, the plain meaning of the contract prevails, and the promissory note is enforceable according to its terms. As such, the trial court erred by relying on a theory of unjust enrichment.

¶ 21. Finally, we reach plaintiff's argument that the trial court erred by finding facts that have no foundation in the record. Specifically, plaintiff contests "the trial court's finding that [plaintiff] did not suggest that the attorney's fees clause would be part of the agreement." However, deciding this issue is not necessary for resolution because this finding has no bearing on our decision that the contract is enforceable according to its terms. See Ferris v. Ferris, 140 Vt. 12, 16, 433 A.2d 304, 306 (1981) ("Since the case is adequately disposed of on other grounds, we need not address [other] issue[s].").[2]

¶ 22. Nonetheless, there is no requirement a contract is enforceable only even if the terms of the agreement were specifically discussed prior to reducing them to writing. A party may propose a written contract, but it is the receiving party's responsibility to read the contract

___

[2] We similarly need not reach plaintiff's argument that the trial court erred in finding the attorney's-fees provision was "contrary to the course of informal, friendly cooperation and collaboration between the parties." In holding the promissory note is enforceable, we do not rely on this finding.

before accepting those terms. <u>Hetchkop</u>, 116 F.3d at 34. Regardless of whether the parties discussed the attorney's-fees provision prior to defendant signing the promissory note, the promissory note is enforceable by its terms. While we do not address whether this finding by the trial court is clearly erroneous, we hold the trial court erred in declining to enforce the promissory note on the ground that the parties did not discuss the attorney's-fees provision prior to defendant agreeing to the terms. See <u>Silva v. Encyc. Britannica Inc.</u>, 239 F.3d 385, 389 (1st Cir. 2001) ("It is not the law that one must bargain for each and every written term of a contract." (quotation omitted)).

¶ 23. The promissory note, signed by defendant is enforceable according to its written terms. By signing the promissory note, defendant agreed to its terms, including the attorney's-fees provision. It was not a contract of adhesion and is not otherwise unconscionable. As such, the trial court erred in relying on a theory of unjust enrichment. Accordingly, the trial court's order with respect to the enforcement of the promissory note is reversed, and the case is remanded for further proceedings consistent with this opinion.

<u>Reversed and remanded</u>.

FOR THE COURT:

_____

Associate Justice

9