Filed 04/18/25

VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org



Docket No. 21-ENV-00021
Docket No. 21-ENV-00124

| | |
|---|---|
| **110 Riverside Avenue NOV Appeal.** <br><br> **City of Burlington v. SBIG, LLP** | **DECISION ON MOTIONS** |

These two coordinated matters relate back to a December 3, 2020 Notice of Violation issued by the City of Burlington (City) against Sisters and Brothers Investment Group, LLP (Respondent) for operating an automobile/vehicle salvage yard at 110 Riverside Avenue, Burlington, Vermont (the Property) without a zoning permit, and for occupying the Property without a Unified Certificate of Occupancy.[1] Respondent appealed the NOV to this Court on March 16, 2021, which was assigned Docket No. 21-ENV-00021. Later, on December 2, 2021, the City initiated an enforcement action related to the violations identified in the NOV, which was assigned Docket No. 21-ENV-00124. Both actions were resolved by way of a proposed Stipulation and Order, which was endorsed by this Court (Durkin, J.) on October 13, 2023.

Presently before the Court are the City's post-judgment motions to enforce the Stipulation and Order and for contempt. The Court noticed and held an evidentiary/show cause hearing on the motions on April 11, 2025. The parties appeared in person at the Costello Courthouse in Burlington, Vermont. In this matter, the City is represented by Attorney Kimberlee Sturtevant. Respondent is represented by Attorney Brian Hehir.

## Findings of Fact

1. Sisters and Brothers Investment Group, LLP (Respondent) owns the property located at 110 Riverside Avenue in Burlington, Vermont (the Property). Prior to Respondent's ownership of the Property, it was used for automobile repair and sales. Respondent has used the Property in connection with its towing business and for some automobile sales.

---

[1] Certain materials in the record refer to the street address of the Property as 114 Riverside Avenue. The Court understands 110 Riverside Avenue and 114 Riverside Avenue to constitute the same property for the purposes of these coordinated proceedings.

2. On December 3, 2020, the City issued a Notice of Violation (NOV) to Respondent for unpermitted operation of an automobile/vehicle salvage yard and occupation of the Property without a Unified Certificate of Occupancy.

3. Following a February 22, 2021 decision of the Burlington Development Review Board (DRB) upholding the NOV, Respondent appealed the NOV to this Court on March 16, 2021.

4. Later, on December 2, 2021, the City initiated a zoning enforcement action related to the violations identified in the NOV.

5. The Court (Durkin, J.) noticed these matters for a merits hearing to occur on August 31, 2023.

6. On the morning of trial, the parties reported to the Court that they had tentatively settled the matter.

7. The Court instructed the parties to report the basic terms of the settlement on the record, which they did.

8. The parties thereafter memorialized the details of their settlement agreement in writing, and the Court endorsed the agreement as an Order, on October 13, 2023 (the Stipulation and Order).

9. Prior to submitting the Stipulation and Order to the Court, Joseph Handy, Respondent's agent and one of its partners — who testified on its behalf during the evidentiary/show cause hearing — read the Stipulation and Order and understood Respondent's obligations thereunder.

10. The Stipulation and Order contains a series of deadlines, both intermediate and final, to bring the Property into compliance over an approximately eighteen-month period and includes enforcement provisions if those deadlines are not met.

11. The first deadline in the Stipulation and Order is that by September 29, 2023, Respondent was required to file a complete application to demolish all buildings on the Property. Stipulation and Order ¶ 4. Thereafter, Paragraph 4 required Respondent to complete the demolition and seek a certificate of occupancy within 60 days from approval of the demolition permit application. Id. Respondent was required to remove any and all debris from the demolished buildings within 60 days and prior to the issuance of a certificate of occupancy.

12. Then, by October 15, 2023, Respondent was required to have cleaned up the Property as follows:

- No more than 40 cars and 2 campers could remain on-site;

- The 40 cars and 2 campers could be on the paved portion of the site only—not the grass;

- Any other materials, vehicles, debris, etc. not contained in the buildings was required to be removed from the site. Id. at ¶ 5.

13. Also, by October 15, 2023, Respondent was required to restore any landscaping grass areas. Id. at ¶ 10.

14. Finally, by March 14, 2025, Respondent was required to remove all vehicles and campers from the lot, so that the lot was vacant, and must submit a complete application for a new use at the Property. Id. at ¶ 7.

15. The Stipulation and Order, at Paragraph 1, provides that the agreement "resolves the issues cited in the above-referenced December 3, 2020 N.O.V. … so long as [Respondent] is in compliance with this Stipulation. If [Respondent] breaches the Stipulation through a missed deadline or otherwise, the City may enforce the Stipulation through any and all available mechanisms." Id. at ¶ 1.

16. Regarding fines, the Stipulation and Order states that Respondent shall pay the City a fine "as settlement of any fines or penalties and administrative costs relating to this matter, except for fines or penalties related to any violation of this Stipulation or otherwise occurring subsequent hereto." Id. at ¶ 2.

17. The "Stipulation fine" to be paid by Respondent to the City "if [Respondent] meet[s] the deadlines in the Stipulation" is $12,500.00, payable in three installments. Id.

18. The parties agree that Respondent paid the $12,500.00 fine in substantial compliance with the installment schedule.

19. The Stipulation and Order further mandates that if Respondent is late on any of the above-referenced deadlines, "there shall be an additional fine of two hundred dollars ($200.00) per day for each day after the deadline until the required action is completed." Id.

20. Per the Stipulation and Order, so long as Respondent complies with the specific items listed in the Stipulation, the City agrees not to seek penalties for zoning violations to which it may be entitled under State law and the zoning regulations. However, any non-compliance with the terms of the Stipulation shall be considered a zoning violation and subject to all penalties and fines allowed under 24 V.S.A. § 4451(a) "in addition to any other sanctions provided by law." Id. at ¶ 12.

21. Lastly, the Stipulation and Order provides that if the City is required to pursue legal action for enforcement, the City shall be entitled to recover reasonable attorney's fees from Respondent. Id. at ¶ 16.

22. On September 27, 2023, prior to the first deadline in the Stipulation and Order, Respondent filed a Zoning Permit Application with the City to demolish the then-existing, 6,887 square-foot single-story building on the Property.

23. The City approved the zoning permit that same day. The zoning permit contained conditions requiring Respondent to contact the Vermont Department of Health for a lead and asbestos assessment. The permit also noted that the project would need a construction permit. City's Ex. D.

24. A pre-demolition asbestos inspection report identified asbestos in tar used in association with the building's roof joints on top of a parapet wall. Respondent's Ex. 4 (originally designated Respondent's Exhibit D).[2] The Asbestos Inspection Report is dated November 30, 2023. Id.

25. Asbestos remediation was completed on January 17, 2024. Respondent's Ex. 5 (originally designated Respondent's Exhibit E).

26. On February 8, 2024, the City issued a building permit authorizing the demolition of the building. Respondent's Ex. 2. The building permit required Respondent to perform "ALL WORK TO CURRENT VT FIRE & BUILDING SAFETY CODE & BCO [and] TO INCLUDE ASBESTOS ABATEMENT DOCUMENTATION."

27. Sixty days from February 8, 2024 was April 8, 2024.

28. On July 11, 2024, Respondent provided the Vermont Department of Health with a Notification of Demolition. The notice contemplated a demolition completion date of July 31, 2024. Respondent's Ex. 6 (originally designated Respondent's Exhibit F).

29. Demolition of the single-story building did not begin until fall of 2024 and was not substantially complete until March 14, 2025. Affidavit of Joseph Handy at ¶ 10.

30. Demolition occurred slowly over approximately 4.5 months. Even after substantial completion of the demolition work was achieved, portions of the building remained upright, and debris remained on the Property, up to and including, March 17, 2025. Affidavit of Steven Cormier.

31. As of the date of this Court's April 11, 2025 motion hearing, the parties agree that the demolition of the building and removal of debris is substantially complete.[3] Substantial compliance with those provisions of the Stipulation and Order regarding demolition of the building and removal of debris was achieved the same week as the motion hearing (i.e., the week of April 6, 2025).

32. Since October 15, 2023, there have consistently been more than 40 cars and two campers on the Property, including vehicles parked on the grass.

---

[2] At the hearing, both the Plaintiff and Respondent used letters to identify their respective exhibits. To avoid confusion, the Court indicated that it would instead refer to Respondent's Exhibits A-E as Respondent's Exhibits 1-6.

[3] The parties reached this conclusion of substantial compliance notwithstanding that portions of the building's exterior walls and foundation/pad continue to exist on the Property, as does a large dumpster containing demolition debris. City's Exhibits VV & WW.

4

33. William Ward, the City's Director of Permitting and Inspections, is familiar with the Property. He inspected the Property in November and December 2023.

34. During these visits there more than 40 cars were parked on the Property.[4]

35. During this period, there was trash, debris, and vehicles parked on the grass.

36. Director Ward made similar visits to the Property in March and April 2024. The Property similarly remained in non-compliance at those times.

37. Steven Cormier, the City's Zoning Enforcement Officer, inspected the Property over multiple dates from April 2024 through March 2025. Specifically, he visited the Property on April 23, 2024, April 29, 2024, May 8, 2024, May 13, 2024, May 31, 2024, June 5, 2024, July 2, 2024, July 10, 2024, July 17, 2024, July 24, 2024, August 12, 2024, October 7, 2024, October 29, 2024, November 14, 2024, December 18, 2024, January 13, 2025, January 14, 2025, January 27, 2025, March 7, 2025, March 14, 2025, and March 17, 2025. At these visits, Mr. Cormier took extensive photographs, most of which were introduced at the motion hearing.[5]

38. With only a few exceptions, more than 40 cars and two campers were on the Property during those inspections.

39. With only a few exceptions, cars were parked on the grass during those inspections.

40. At every inspection, there was debris on the Property and the grass had not been restored.

41. There were still cars parked on the Property when the City filed its motion to enforce the Stipulation and Order.

42. As of April 11, 2025, construction vehicles remain parked on the Property, including a bucket loader, two bulldozers, a dump truck, and a trailer. The grass areas have also not been restored.

43. As of April 11, 2025, Respondent has not submitted to the City a complete application for a new use of the Property.

44. On Wednesday, November 8, 2023, the City's attorney emailed Respondent's attorney that the Property was not in compliance with the Stipulation and Order. The email outlined the various items

---

[4] This observation is supported by City's Exhibit M, photographs Director Ward took of the Property in December 2023 depicting numerous vehicles on site, including vehicles parked on the grass.

[5] At the hearing, the City began by having Mr. Cormier testify as to whether the photographs in Exhibits T through WW accurately correspond to the observations listed in his sworn affidavit. For efficiency purposes, the Court asked whether the parties could stipulate to their admission, subject to cross-examination. The parties agreed to this arrangement. Respondent did not elicit any testimony to contradict that the photographs are fair and accurate representations of Mr. Cormier's personal observations and sworn statements. The Court finds his observations to be credible, and adequately supported by the photographs in Exhibits T through WW.

of non-compliance and indicated that the $200 per day penalty contemplated by the Stipulation and Order would continue to accrue until Respondent came into compliance.

45. The City's attorney sent several follow-up emails in December and January, explaining that the Property was still not in compliance. The emails explained the City's position on the accumulation of penalties, and that if compliance was not achieved within a reasonable time, that the City would initiate contempt proceedings.

46. On April 18, 2024, the City's attorney sent another follow-up email, including new items of non-compliance.

47. In total, between November 8, 2023 and April 18, 2024, the City's attorney emailed Respondent's attorney at least six times regarding Stipulation and Order compliance issues and potential penalties.

48. On July 17, 2024, Director Ward sent Joseph Handy a letter with an attached invoice for $20,000. City's Ex. XX. The letter explained that there were several unmet conditions of the Stipulation and Order. Specifically, the letter references the 60-day demolition deadline and determined that demolition should have been complete by April 8, 2024. The invoice was for penalties of 100 days of noncompliance since the April 8, 2024 demolition deadline.

49. At some point, Director Ward may have said to one of Respondent's representatives that the City would not have an issue with Respondent temporarily having more than 40 cars on the Property, provided there was a same-day exchange of vehicles and the total number of vehicles on the Property did not exceed 40 at the end of the day.

## Discussion

### I.        Motion to Enforce

In considering a motion to enforce a settlement agreement, we review the terms of the settlement agreement and enforce it as we would enforce a contract. See In re Ferro & Pomeroy Demo/Construction Permit, No. 197-10-09 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Nov. 22, 2011) (Durkin, J.) ("A settlement agreement is fundamentally a contract between parties that can be enforced by this Court as such."). When entering into a settlement agreement, parties are free to envision their own solution to the conflict that has brought them to litigation; they are not constrained by the rulings a court could issue if the case were to reach trial. Id. However, the parties are constrained by the limitations of contract law. Id. "When the language of an agreement is clear, [a] Court must interpret the intentions and understanding of the parties as they are declared within the agreement." Downtown Barre Dev. v. GU Markets of Barre, LLC, 2011 VT 45, ¶ 9, 189 Vt. 637.

Further, we must give effect to every part of the agreement. R & G Props., Inc. v. Column Fin., Inc., 2008 Vt. 113, ¶ 17, 184 Vt. 494 (quoting In re Verderber, 173 Vt. 612, 615 (2002)).

Here, neither party disputes that they entered into a binding settlement agreement that was thereafter incorporated into a Court Order. Nor does Respondent challenge the validity or enforceability of any of the provisions in the Stipulation and Order. The City offered substantial documentary, photographic, and testimonial evidence to demonstrate that Respondent was not in compliance with the Stipulation and Order starting October 16, 2023, and continuing until the April 11, 2025 motion hearing. Those violations include: exceeding the 40 car and 2 camper maximum after October 15, 2023; parking cars on grass; failing to clean up trash and debris; and failing to timely demolish the existing building. Respondent offered no contravening evidence to demonstrate that it was, in fact, in compliance with the Stipulation and Order. Accordingly, we conclude that Respondent was in violation of the Stipulation and Order for the period running from October 16, 2023 through April 11, 2025. This leads to a total of 543 days of violations of the Stipulation and Order.

The City seeks to enforce these violations of the Stipulation and Order through Paragraph 2, which provides that: "If [Respondent] is late on any of the deadlines of the Stipulation, there shall be an additional fine of two hundred dollars ($200.00) per day for each and every day after the deadline until the required action is completed." Stipulation and Order at ¶ 2. While the parties freely agreed to the Stipulation and Order, and it was thereafter signed by the Court, we believe that this provision constitutes an unenforceable liquidated damages penalty provision.

In Vermont, "[t]he ultimate test for the validity of a liquidated damages clause is whether the clause is reasonable under the totality of the circumstances." Highgate Assoc's., Ltd. v. Merryfield, 157 Vt. 313, 316 (1991). In determining whether a contract provision is a reasonable liquidated damages clause, rather than an unlawful penalty, we consider the following three criteria, which should be met for the liquidated damages clause to be upheld: (1) the damages arising from a breach would be difficult to accurately calculate; (2) the sum fixed must reflect a reasonable estimate of likely damages; and (3) the provision must be intended solely to compensate the nonbreaching party and not as a penalty for breach or as an incentive to perform. Id. These factors, while not exclusive or necessarily conclusive, provide a framework for the Court to determine whether a particular clause is reasonable. Id.

Here, the City has not demonstrated that, because of the nature or subject matter of the Stipulation and Order, damages arising from a breach by Respondent would be difficult to accurately calculate. Nor has the City shown that the $200 per day fine is related to its actual or expected damages

resulting from the breach. Nothing in the language of Paragraph 2 (or elsewhere in the Stipulation and Order) indicates that the $200 per day fine is intended to compensate the City for losses arising from Respondent being "late on any of the deadlines of the Stipulation" or what those losses may be. Accordingly, the Court concludes that ¶ 2, to the extent that it requires a mandatory $200 per day fine if Respondent is late on any deadlines in the Stipulation, is an unreasonable and unenforceable liquidated damages penalty provision.

Similarly, the City is not automatically entitled to a $200 per day fine under its zoning enforcement authority. Rather, the Vermont Legislature has established a process for municipalities to pursue violations of their bylaws and recover fines as ordered by the Court. See 24 V.S.A. § 4452 (setting forth the remedies available to a municipality if a zoning violation occurs); 24 V.S.A. § 4451 (setting forth the process by which a municipality may enforce its zoning regulations against a violator and recover fines); V.R.E.C.P. 3(5) (granting original jurisdiction over actions to recover penalties for violations of bylaws enacted under Chapter 117, as provided by 24 V.S.A. § 4451, to this Court and requiring that such actions be commenced and conducted as civil actions under the Vermont Rules of Civil Procedure, and other rules as applicable). Accordingly, for the City to be entitled to a monetary penalty, this Court must first determine that the violations exist and then it may independently exercise its discretion to determine a penalty amount. Parties cannot simply sidestep the Court process where the Legislature has conferred exclusive jurisdiction over enforcement actions to this Court.[6]

This is the continuation of an enforcement action initiated by the City in 2021. The parties resolved those at-issue violations through the Stipulation and Order. Stipulation and Order ¶ 12 provides that "[a]ny non-compliance with the terms of this Stipulation shall be considered a violation of zoning and is subject to all penalties, fines, etc. as allowed under 24 V.S.A. § 4451(a)…" Thus, the Stipulation and Order functions as a final decision on the 2020 Notice of Violation, and the City is entitled to seek fines and penalties for violations of the Stipulation and Order pursuant to 24 V.S.A. § 4451.[7]

---

[6] The process adopted by the Legislature affords property owners due process protections. In such properly filed enforcement actions, this Court sits to protect the interests of both municipal plaintiffs and respondent property owners and citizens to ensure "full and fair determination[s] in every matter coming before the [C]ourt." V.R.E.C.P. 1. Thus, this Court is tasked with ensuring that the matters before it are conducted fairly and completely.

[7] To conclude otherwise would deprive the City of its ability to enforce against past violations of both the 2020 NOV and the Stipulation and Order. This cannot be the case. A municipality must take appropriate action to "prevent, restrain, correct, or abate" violations of its zoning regulations. 24 V.S.A. § 4452. A respondent may not avoid responsibility for its past violations by entering into a settlement agreement and then not complying with the terms of such an agreement. Rather, it is necessarily within this Court's jurisdiction to enforce such an agreement pursuant to 24 V.S.A. §§ 4451 and 4452 when the agreement was entered into to resolve ongoing zoning violations. Respondent had more than sufficient

8

When determining the amount of a fine for a zoning violation under 24 V.S.A. 4451, the Court has broad discretion once it has determined the existence of the zoning violation. Sisters & Brothers Inv. Grp., 2023 VT 24, ¶ 18. Typically, the Court considers several relevant factors, including: (1) the actual or potential impact on public health, safety, welfare, and the environment; (2) the presence of mitigating circumstances; (3) whether respondent knew or had reason to know the violation existed; (4) the respondent's record of compliance; (5) the deterrent effect of the penalty; (6) the Towns actual costs of enforcement; and (7) the length of time the violation existed. Id.; 10 V.S.A § 8010.

The parties provided scant evidence regarding the first factor, and the Court is not convinced that that the violations at issue here present an especially significant or substantial impact on public health, safety, or the environment. In fact, despite some delays, Respondent took the necessary steps to remove any asbestos containing materials prior to demolition of the building. However, because we received no evidence on potential harms, we consider this factor to be neutral in our analysis of an appropriate penalty.

With respect to mitigating circumstances, Respondent argues that it was unable to comply with the Stipulation and Order because of permitting delays by the City and due to members of the public parking on the Property. These arguments are disingenuous. The record demonstrates that the City promptly issued a zoning permit for demolition the same day that Respondent applied. A building permit was not subsequently issued until Respondent provided proof of asbestos removal. Even so, the City did not consider the demolition delays as a violation until 60 days after Respondent had all applicable permits in hand. Respondent offered no explanation for why it took several months to begin demolition once it had all the necessary permits, and why demolition took several months to complete once it had begun. Additionally, we are not convinced that members of the public caused Respondent to violate the 40-car maximum. Respondent offered no evidence to suggest that public parking is occurring (except for Mr. Handy's own limited testimony). Furthermore, Respondent owns and operates a commercial towing company and can tow cars from the Property that are not authorized to be there. Lastly, the Stipulation and Order does not distinguish between cars parked on the Property by members of the public versus cars that are part of Respondent's business operations.

The only relevant mitigating circumstance offered by Respondent is that it would be inefficient to reseed any grass until after demolition had occurred and that complete removal of the remaining building foundation walls could result in erosion of the slope adjacent to Colchester Avenue. The

notice that it was in violation of the Stipulation and Order, and had the opportunity to defend against such violations at the April 11 evidentiary hearing.

City seemed receptive to these arguments, but pointed out that there is grass damage caused by parked cars that are away from the building demolition area. Accordingly, these arguments do not present compelling mitigating circumstances that would justify a lower penalty amount.[8]

We now turn to the third and fourth factors, which address whether Respondent knew or had reason to know the violations existed, as well as Respondent's record of compliance. Here, the record demonstrates that Respondent was well aware of the violations of the Stipulation and Order, and made minimal efforts to comply until the City filed the present motions.

The dispute regarding the Property dates all the way back to 2020. Respondent, acting through its partners and attorney, negotiated the Stipulation and Order as a resolution of the zoning violations alleged by the City in the 2020 NOV. In so doing, they read and understood the Stipulation and Order and their obligations thereunder. Despite reaching an agreement to resolve the underlying issues in the 2020 NOV, Respondent continued to miss the agreed upon deadlines for compliance. This lengthy history of non-compliance justifies a substantial penalty amount.

Between November 2023 and April 2024, the City's attorney sent Respondent's attorney a series of emails explaining that Respondent was in violation of the Stipulation and Order. Then, on July 17, 2024, Director Ward sent Respondent's agent and one if its partners, Joseph Handy, a letter explaining the outstanding violations. The letter also included an invoice for $20,000 resulting from past violations. Respondent offered no evidence showing that it responded to the City's repeated attempts at communication.[9] Nor did Respondent explain the reasons for the demolition delays or its failure to comply with the various deadlines in the Stipulation and Order.

The parties agree that Respondent has recently brought the Property into substantial compliance with the Stipulation and Order. Accordingly, any penalty would have only a minimal deterrent effect.

---

[8] The Court also considered whether the City unreasonably delayed in bringing its motions to enforce and for contempt. Neither party raised this point at the hearing, but we think it is worth noting that the City could have brought the present motions after Respondent first violated the October 15, 2023 deadline in the Stipulation and Order. In fact, the City repeatedly threatened to go back to court for contempt proceedings, but waited nearly two years to do so. At this time, the Court can only speculate as to the reasons for the delay. However, we think the City made reasonable attempts to communicate with Respondent, and it is ultimately Respondent's failure to bring the Property into compliance that is most compelling. The City promptly filed the present motions after Respondent failed to comply with the final March 14, 2025 deadline. Accordingly, we conclude that there was no unreasonable delay by the City in seeking enforcement.

[9] At trial, the Court asked Mr. Handy whether he made any efforts to reach out to Director Ward in order to discuss potential difficulties in complying with the Stipulation and Order. Mr. Handy testified that they had communicated several times. However, on rebuttal, Director Ward testified that he had not had any conversations with Mr. Handy about the 110 Riverside Property, except for sending the July 17, 2024 letter and invoice. Absent any documentary evidence to the contrary, we conclude that Respondent did not make reasonable efforts to communicate with the City regarding its non-compliance with the Stipulation and Order.

With respect to the City's actual costs of enforcement, the City filed a post-trial memorandum outlining the legal fees and expenses that it has incurred since November 2023. In sum, the City has incurred $20,922.65 in legal fees and expenses in connection with 66.8 total billable hours at a rate of $300 per hour. The Court finds these costs reasonable in light of the lengthy history of this case and the City's repeated efforts to communicate with Respondent. These attorney's fees do not account for the time and resources spent investigating the Property by other employees in the City Permitting and Inspections Department. It is therefore likely that the actual costs to the City are even higher.

Finally, we repeat the length of time that the violations existed. While these matters date back to 2021, the Stipulation and Order resolved any past violations. Respondent first violated the Stipulation and Order by failing to comply with the October 15, 2023 deadline. The record evidence demonstrates that Respondent did not come into substantial compliance with the Stipulation and Order until the week of the April 11, 2025 motion hearing. Even so, there are several tasks in the Stipulation and Order which remain to be completed. Accordingly, the violations occurred for a total of 543 days (October 16, 2023 through April 11, 2025).

Taking these factors into consideration, particularly the length of the violation, record of compliance, and the Town's costs of enforcement, we conclude that the facts of this case warrant a penalty amount of $80.00 per day. The violations at issue occurred for 543 days, which leads to a total penalty of $43,440.

## II.     Contempt

The City also requests a contempt order pursuant to 12 V.S.A. § 122 requiring Respondent to come into compliance with the October 13, 2023 Stipulation and Order. A determination that civil and not criminal contempt is the proper characterization for contemptuous behavior guides our consideration of the proper remedy. Compared with criminal contempt, where the purpose of the remedy is to punish a non-complying party, the purposes of a civil contempt remedy is to compel compliance with a court order for the benefit of the non-offending party. Sheehan v. Ryea, 171 Vt. 511, 512 (2000)(mem.).

Civil "[c]ontempt sanctions provide courts with a means of coercing a party's compliance with orders where that party has refused to comply." Town of Pawlet v. Banyai, 2024 VT 13, ¶ 6 (citing Sheehan v. Ryea, 171 Vt. 511, 512 (2000)). "Courts have discretion to craft appropriate contempt sanctions to coerce compliance, which may include fines… or other sanctions the court deems appropriate." Id. (citing Mayo v. Mayo, 173 Vt. 459, 463 (2001)). When imposing a coercive sanction for civil contempt, the fine must be purgeable such that a Respondent may avoid the fine by coming

into compliance with the court's order. Vermont Women's Health Ctr. v. Operation Rescue, 159 Vt. 141 (1992) (citation omitted).

At this time, the parties agree that the Property is in substantial compliance with most of the Stipulation and Order. However, Respondent has not strictly complied with the Stipulation and Order and several work items remain to be completed. Specifically, Respondent must remove any remaining trash and debris, remove all equipment, bring in topsoil and mulch, and fix the landscaping in the front of the Property.[10] Respondent also needs a final Certificate of Occupancy to close out its demolition permits. Unless and until Respondent has fulfilled all of its obligations under the Stipulation and Order, it is IN CONTEMPT thereof. We therefore **ORDER** Respondent to resolve these outstanding work items within 30 days from the date of this Decision. While we decline to impose coercive contempt sanctions at this time, particularly in light of the above amount imposed with respect to the motion to enforce, Respondent's failure to complete these items within 30 days will constitute a separate and enforceable violation of the Stipulation and Order and could result in future contempt sanctions.

The City also seeks enforcement and contempt sanctions for Respondent's failure to submit a complete application for a new use at the Property. This we will not do. The purpose of zoning is to regulate land development. See 24 V.S.A. § 4411 ("Zoning bylaws may permit, prohibit, restrict, regulate, and determine land development."). As it currently exists, the Property is a vacant lot with no approved use. Accordingly, any use of the Property without a zoning permit would constitute an enforceable zoning violation. The City points to no provision of State law or in the Burlington Comprehensive Development Ordinance which would allow it to require a property owner to submit a zoning permit application without there being some kind of activity or use that requires a permit. There is no merit to imposing such a requirement here, since the language of the Stipulation and Order does not specify what use Respondent should apply for. If Respondent has no present intended use for the Property, can it satisfy this requirement by applying for a use that it never intends to develop? Because of the futility of this requirement, we decline to require Respondent to submit a zoning permit application.

---

[10] At the hearing, the City agreed that demolition was substantially complete, and did not ask the Court to order that the remaining building foundation walls and concrete pad be removed. Because removal of these structures may necessitate further environmental assessment, and because the City does not actively seek their removal, we decline to order their removal at this time.

### III. Attorney's Fees

As part of its relief in this case, the City seeks recovery of its attorney's fees. In general, we follow the American rule that each party is responsible for its own attorney's fees. DJ Painting, Inc. v. Baraw Enters., Inc., 172 Vt. 239, 246 (2001). Attorney's fees may be awarded, however, when provided for by statute or in a contract between the parties. Fletcher Hill, Inc. v. Crosbie, 2005 VT 1, ¶ 5; Ianelli v. Standish, 156 Vt. 386, 389 (1991) (granting fees due under a contract to the prevailing party as a matter of law). In this case, Paragraph 16 of the Stipulation and Order provides that "[i]n addition to all other available remedies, if the City is required to pursue legal action to enforce this Stipulation, the City shall be entitled to recover from SBIG its reasonable attorney's fees incurred in such action."

As noted above, the City has submitted its legal fees and the Court has concluded that those fees are reasonable and were reasonably incurred given the circumstances of this case. However, rather than separately award attorney's fees, the Court has included recovery of the full amount of the City's attorney's fees in its daily penalty calculation and fine award under 24 V.S.A. § 4451. Therefore, no further attorney's fees award is provided here.

### Conclusion

For the forgoing reasons, we conclude that the City is not automatically entitled to a $200.00 per day penalty as contemplated by the Stipulation and Order. Such a provision constitutes an unenforceable liquidated damages provision and sidesteps this Court's exclusive statutory authority to assess appropriate penalties for zoning violations. Nonetheless, the City has in fact demonstrated that Respondent was in continuous violation of the Stipulation and Order, which renders those violations subject to the enforcement provisions of 24 V.S.A. § 4451. Taking the various administrative penalty factors into consideration, particularly the length of the violation, Respondent's record of compliance, and the City's costs of enforcement, we conclude that the facts of this case warrant a penalty amount of $80 per day. The violations at issue occurred for 543 days, which leads to a total penalty of $43,440, inclusive of the City's attorney's fees.

In addition, while the Property is now close to compliance, there remain several work items that need to be completed. Respondent is in CONTEMPT until it has met all of its obligations under the Stipulation and Order. Accordingly, we **ORDER** Respondent to remove any remaining trash and debris, remove all equipment, bring in topsoil and mulch, and fix the landscaping in the front of the Property within 30 days from the date of this Decision. To the extent that Respondent has any

questions regarding what steps it must take to bring the Property into compliance with the Stipulation and Order, it shall promptly communicate those questions to the City.

Electronically signed on April 18, 2025, pursuant to V.R.E.F. 9(d).

Joseph S. McLean
Superior Court Judge
Environmental Division